JOHN PHILIP BROWN *vs.* COMMISSIONER OF CORRECTION
& another.[1]

Suffolk. December 3, 1984. — February 19, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Imprisonment. Practice, Criminal,* Indictment, Sentence, Plea. *Waiver.*
*Words,* "Infamous punishment."

Article 12 of the Massachusetts Declaration of Rights, as interpreted in *Jones*
v. *Robbins,* 8 Gray 329 (1857), prohibited the Commissioner of Correc-
tion, acting under G. L. c. 127, § 97, from transferring a certain prisoner
to the State prison, where the prisoner had been proceeded against by
complaints, rather than by indictments, and had been sentenced to incar-
ceration at MCI, Concord, following pleas of guilty in a District Court.
[91-94]

CIVIL ACTION commenced in the Superior Court Department
on November 12, 1982.

The case was heard by *Edith W. Fine,* J., on a motion for
summary judgment.

The Supreme Judicial Court granted requests for direct ap-
pellate review.

*John P. Osler* for the plaintiff.
*James Remeika* for the defendants.

ABRAMS, J. We hold that a Superior Court judge correctly
declared that art. 12 of the Massachusetts Declaration of Rights
"prohibits confinement in the state prison at Walpole of the
plaintiff, a prisoner who has not been indicted and who has
not waived indictment."[2] Thus, the Commissioner of Correc-

---

[1] Superintendent, Massachusetts Correctional Institution, Walpole.

[2] Massachusetts Constitution, Part I, art. 12, provides in part that "the
legislature shall not make any law, that shall subject any person to a capital
or infamous punishment, excepting for the government of the army and
navy, without trial by jury."

tion (commissioner) could not transfer an unindicted prisoner to MCI Walpole, pursuant to G. L. c. 127, § 97.[3] On appeal, the commissioner asks us to overrule that portion of *Jones* v. *Robbins,* 8 Gray 329 (1857), which holds that a person may not be sentenced to the State prison unless that person has been indicted by a grand jury. The commissioner urges us to hold that he may transfer any sentenced prisoner to the State prison pursuant to G. L. c. 127, § 97, even if the prisoner's conviction is based on a complaint. We decline to depart from the rule of *Jones* v. *Robbins, supra.*

There is no dispute as to the material facts. On July 23, 1981, after pleading guilty in the District Court to four complaints of breaking and entering, larceny, and possession of burglarious instruments, the plaintiff was sentenced to four concurrent indefinite terms at the Massachusetts Correctional Institution, Concord. See G. L. c. 279, § 31. The plaintiff was never indicted for those offenses. He remained at MCI Concord for about three months, whereupon he was transferred to MCI Walpole as a "serious safety and security threat."[4] See G. L. c. 127, § 97. Except for a brief transfer to the Southeastern Correctional Center at Bridgewater in early 1982, the plain-

---

[3] General Laws c. 127, § 97, as appearing in St. 1968, c. 627, provides: "The commissioner may transfer any sentenced prisoner from one correctional institution of the commonwealth to another, and with the approval of the sheriff of the county from any such institution except a prisoner serving a life sentence to any jail or house of correction, or a sentenced prisoner from any jail or house of correction to any such institution except the state prison, or from any jail or house of correction to any other jail or house of correction. Prisoners so removed shall be subject to the terms of their original sentences and to the provisions of law governing parole from the correctional institutions of the commonwealth."

[4] According to an affidavit sworn to on December 9, 1982, by the associate commissioner for classification, the plaintiff "was classified to MCI Walpole in November, 1981 for several reasons, among them evidence of two attempted escapes while previously incarcerated, one while confined at Levenworth Penitentiary, and another while at the Niagara County Jail in New York; a parole violation warrant from the State of New York; and evidence of being a significant management and disciplinary problem while confined in five New York State prisons."

tiff was housed at MCI Walpole until his release on parole on October 31, 1983.[5]

The plaintiff began the instant action seeking monetary and injunctive relief in the Superior Court on November 12, 1982. He claimed that his physical confinement at MCI Walpole violated his right, guaranteed by art. 12 of the Massachusetts Declaration of Rights, to be free of "infamous punishment" except on an indictment. A judge denied the plaintiff's motion for a temporary restraining order, and the plaintiff's subsequent motion for a preliminary injunction was denied on December 22, 1982. A single justice of the Appeals Court denied the plaintiff's petition for relief (G. L. c. 231, § 118), on February 14, 1983. The parties filed cross motions for summary judgment, and on September 19, 1983, a judge of the Superior Court granted partial summary judgment for the plaintiff. The judge ruled that G. L. c. 127, § 97, "insofar as it authorizes the defendant [commissioner] administratively to transfer an inmate serving a Concord sentence to Walpole, is unconstitutional if the inmate was not indicted and did not waive indictment." The plaintiff amended his complaint, on December 22, 1983, striking his demands for injunctive and monetary relief and substituting a prayer for declaratory relief. Final judgment was entered on January 12, 1984.[6] The commissioner appealed. Both parties filed applications for direct appellate review. We granted their applications. We affirm.

The plaintiff appropriately relies on this court's decision in *Jones* v. *Robbins*, 8 Gray 329 (1857), for his proposition that "it has been black-letter law since 1857 that article 12 prohibits

---

[5] While at MCI Walpole, the plaintiff apparently spent a significant period in the Departmental Segregation Unit for serious disciplinary complaints. See generally 103 Code Mass. Regs. §§ 421.06(4), 421.07 (1978).

[6] The commissioner argues that "[d]espite the fact that inmate Brown has been discharged from the custody of the defendants, this appeal should not be deemed moot . . . . [T]he issues presented remain live as to the Commissioner' rights and authority." We agree. Because indeterminate sentences are typically short, see Mass. R. Crim. P. 3 (*b*)(1), Reporters' Notes to Mass. R. Crim. P. 3 (b), Mass. Ann. Laws, Rules of Criminal Procedure at 23 (1979), the issue may evade review. See *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973). The parties have asked us to reach the merits of this appeal and we believe we should do so.

punishment in the state prison of a person who has not been afforded the right to indictment or presentment by a grand jury." Indeed, the *Jones* court's explication of art. 12 of the Declaration of Rights led it "to a strong conclusion of the general understanding of the legislators and jurists of Massachusetts, that punishment in the state prison is an infamous punishment, and cannot be imposed without both indictment and trial by jury." *Id.* at 349. That conclusion has been reaffirmed in recent years. See *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 531-532 (1974). See also Wilkins, Judicial Treatment of the Massachusetts Declaration of Rights in Relation to Cognate Provisions of the United States Constitution, 14 Suffolk U. L. Rev. 887, 924 n.220 (1980). The plaintiff argues syllogistically that, if punishment in the State prison cannot be imposed without indictment under *Jones,* and if MCI Walpole is the "state prison," G. L. c. 125, § 1 (*o*),[7] see *Commonwealth* v. *Graham,* 388 Mass. 115, 123 (1983), then his confinement without indictment at MCI Walpole was in violation of art. 12.

The commissioner contends that the *Jones* rule should be confined "to the rights and protections of an accused criminal defendant." He argues that such rights do not include that of "a state sentenced inmate not to be transferred to MCI Walpole at any time . . . unless the criminal procedure which initiated the state custody included an indictment, or waiver of same." The commissioner maintains that such a right would impede, without justification, "the unfettered authority [of the executive branch] to transfer a state inmate to the state prison, once that inmate has been sentenced and delivered into the custody of the defendant Commissioner of Correction."

We reject this reasoning. Article 12 prohibits the sentencing of a criminal defendant to State prison without indictment. The exercise by the executive branch of "unfettered authority," under G. L. c. 127, § 97, to transfer a criminal defendant to MCI Walpole at a date subsequent to sentencing would seriously

---

[7] We note that by virtue of St. 1984, c. 357, the state prison has been renamed M.C.I. Cedar Junction, effective March 18, 1985.

undermine the protection afforded by art. 12. We recognize the legitimate penological purposes of G. L. c. 127, § 97, as well as the commissioner's broader duty to "maintain security, safety and order at all state correctional facilities . . . ." G. L. c. 124, § 1 (*b*). In the instant circumstances, however, art. 12 demands that the Commonwealth anticipate the security risks presented by the criminal defendant. In the event that such risks indicate the advisability of confinement in the State prison, the Commonwealth may confront the defendant at the outset with the full gravity of his potential punishment and proceed against him by indictment.

A criminal defendant may, of course, waive indictment. See *DeGolyer* v. *Commonwealth,* 314 Mass. 626, 632-633 (1943); G. L. c. 263, § 4A, as appearing in St. 1934, c. 358, later amended by St. 1979, c. 344, § 18. The commissioner here maintains that that, in fact, was what the plaintiff did: "By pleading guilty in District Court plaintiff Brown acknowledged that the state had probable cause and a proper foundation upon which to proceed." But the plaintiff could not waive a right which he did not possess. "Because the defendant tried in District Court is not subject to a sentence to state prison, there is no right to be proceeded against by indictment." Reporters' Notes to Mass. R. Crim. P. 3 (b), Mass. Ann. Laws, Rules of Criminal Procedure at 23 (1979). See G. L. c. 218, §§ 27, 27A (*d*), as amended through St. 1979, c. 344, § 3 (District Court may not impose sentence to State prison).

The commissioner contends, nonetheless, that the plaintiff's guilty pleas were an "affirmative act of making the request" that the District Court retain jurisdiction, see G. L. c. 263, § 4, and, as such, constituted a waiver of the right to indictment. The decision to retain jurisdiction, however, is entirely that of the judge. *Corey* v. *Commonwealth,* 364 Mass. 137, 143 n.9 (1973). That decision must be made before the criminal defendant may enter a guilty plea. Once the decision to retain jurisdiction is made by the judge, there is nothing a defendant may do. Thus, the commissioner's claim of waiver has no merit.

Finally, the commissioner argues that the *Jones* rule is an anachronism. The *Jones* court described confinement in the

State prison as follows: "The convict is placed in a public place of punishment, common to the whole state, subject to solitary imprisonment, to have his hair cropped, to be clothed in conspicuous prison dress, subjected to hard labor without pay, to hard fare, coarse and meagre food, and to severe discipline." *Jones, supra* at 349. Much has changed since 1857. Nevertheless we agree with the Superior Court judge that "although the differences between confinement at Walpole and at other correctional institutions may have diminished, Walpole, as a practical matter is the maximum security prison in the state which houses the most serious and dangerous criminals." Thus, the State prison retains the "character of infamy" and the *Jones* rule remains viable. *Id.*

*Judgment affirmed.*