## COMMONWEALTH VS. JAMIE SPENCER.

No. 00-P-1040.

Middlesex. June 14, 2001. - October 24, 2001.

Present: ARMSTRONG, C.J., GRASSO, & COWIN, JJ.

*Controlled Substances. Due Process of Law,* Grand jury proceedings. *Constitutional Law,* Assistance of counsel. *Evidence,* Hearsay, Prior misconduct. *Practice, Criminal,* Request for jury instructions.

Where a grand jury heard evidence of two separate drug transactions, but returned an indictment for distribution of heroin based on only one, without specifying which transaction was the basis for the indictment, the defendant at a criminal trial was not convicted of an offense punishable by a State prison term without having previously been indicted therefor in violation of art. 12 of the Declaration of Rights of the Massachusetts Constitution, given that the evidence presented to the grand jury gave guidance as to which act was the basis for the single indictment; because the defendant was not deprived of his right to have his trial preceded by an indictment, it was not ineffective assistance of counsel not to seek dismissal on that ground. [47-51]

At a criminal trial, out-of-court statements offered for the purpose of explaining how the police came to focus on the defendant, even if error, could not be said to have created a substantial risk of a miscarriage of justice, given that there was strong nonhearsay evidence of the crime. [51]

The admission at a criminal trial of evidence indicating prior bad acts of the defendant did not create a substantial risk of a miscarriage of justice, where, given the eyewitness testimony of the crime, it was not likely that the result would have been different had the evidence not been admitted. [51-52]

The judge at a criminal trial did not abuse his discretion in denying the defendant's request for a missing witness instruction, because the defendant was not entitled to such an instruction as a matter of right, the judge could consider that the witness was equally available to both parties, and it was doubtful that the witness would have offered testimony of distinct importance to the defendant's case. [52]

INDICTMENTS found and returned in the Superior Court Department on October 23, 1997.

The cases were tried before *Robert Malcolm Graham,* J.

*William A. Korman* for the defendant.

*Marc E. Canner*, Assistant District Attorney, for the Commonwealth.

COWIN, J. We address the question of the adequacy of a grand jury indictment under art. 12 of the Declaration of Rights of the Massachusetts Constitution when the grand jury hears evidence of two separate drug transactions, but returns an indictment based only on one. The defendant was indicted for distribution of heroin (G. L. c. 94C, § 32); for the same crime as a subsequent offense (G. L. c. 94C, § 32[*b*]); and for distribution of narcotics within one thousand feet of a school (G. L. c. 94C, § 32J). He was convicted by a jury upon the indictments alleging distribution and distribution within a school zone, and subsequently pled guilty to the subsequent charge.

The defendant contends that it is impossible to ascertain whether the grand jury indicted him on the transaction for which he was ultimately convicted, or instead indicted him on a separate transaction which did not figure materially at the trial. He claims that his trial counsel was constitutionally ineffective for failing to raise this issue in the form of a pretrial motion to dismiss the indictments.[1] He also attacks the convictions on additional grounds, including the admission of out-of-court statements by a participant in the transactions; testimony by a police witness that indicated inferentially that the defendant had been involved in drug activity before; and denial by the trial judge of the defendant's request for a missing witness instruction. We conclude that there is no merit to the defendant's contentions, and affirm the convictions.

The jury were warranted in finding the following: engaged in a plainclothes prostitution investigation, Detective Sergeant David Ritchie and Detective David Jordan of the Malden Police Department threatened a prostitute, "Rose," with arrest. In an effort to avoid the arrest, Rose stated, "Don't do this to me. Let me go. I'll help you out, whatever you need . . . I'll give you a heroin dealer." The police officers, with Rose, drove to a pay

[1]It has been the long-standing interpretation of art. 12 of the Declaration of Rights of the Massachusetts Constitution that it prohibits punishment in the State prison of a person who has not been afforded the right to indictment or presentment by a grand jury. *Jones* v. *Robbins*, 8 Gray 329, 347-349 (1857).

telephone at a location selected by Rose, and Ritchie dialed a pager number that Rose had given him. Although the page was not answered, within a few minutes the defendant pulled up in a green Neon sedan.

Rose entered the defendant's vehicle on Cedar Street. After a conversation with the defendant, she left the automobile and informed Ritchie that the defendant did not want to make a sale in the present location because he had observed a police car in the area. Instead, Rose reported, the defendant had instructed her to wait at a pay telephone in another neighborhood. The police officers and Rose drove to the alternative location (Main Street) as directed and again dialed the pager number. This time the pay telephone rang, and Rose answered and spoke to the caller. Ritchie heard Rose say into the telephone the words, "I need one more."

Twenty minutes later, the defendant again pulled up. This time, it was Ritchie who approached the defendant. He paid the defendant $60, receiving in exchange a "bundle" (i.e. ten bags) which contained a substance that later tested to be heroin. After that purchase was completed and after the defendant had departed, Ritchie confronted Rose and accused her of having purchased heroin herself from the defendant when she entered his automobile at the earlier location on Cedar Street. Rose responded by reaching into her pants pocket and withdrawing a "bundle" of bags which were confiscated by Ritchie.[2] The defendant was subsequently arrested.

1. *The grand jury indictment.* The Commonwealth presented the case to a grand jury by means of a single witness, Detective Sergeant Ritchie. He testified in accordance with the facts set forth above, including descriptions of his undercover purchase of heroin from the defendant at Main Street and his obtaining a separate "bundle" from Rose. He testified further that the location on Main Street at which he had purchased narcotics from the defendant was situated approximately 800 feet from the Chevrus Elementary School. He concluded his testimony by stating that a review of the defendant's probation record disclosed that he had previously been convicted of heroin

---

[2] These bags were thereafter destroyed without being tested.

distribution. The grand jury returned the three indictments in question: one for distribution, or possession with intent to distribute, of heroin; one for distribution within a school zone; and one for distribution as a second or subsequent offense.

The defendant argues that the grand jury heard evidence of two separate drug transactions. First in time was an apparent sale by the defendant to Rose in the car at Cedar Street, a sale that Rose effectively acknowledged in response to Ritchie's accusation. Subsequently, there was the sale at Main Street to Ritchie himself. However, the grand jury returned a single indictment for distribution without specifying to which of these transactions the indictment related. Citing *Commonwealth* v. *Barbosa*, 421 Mass. 547, 549 (1995), the defendant claims that because the grand jury did not specify which transaction was the basis for the distribution indictment, and since evidence of both transactions was presented at trial, he may have been convicted of an offense punishable by a State prison term without having previously been indicted therefor by a grand jury as required by art. 12. See *Brown* v. *Commissioner of Correction*, 394 Mass. 89, 92 (1985). In order to assess the defendant's contention that the failure to file a motion to dismiss on this ground was ineffective assistance of counsel, we turn to the merits of the defendant's underlying claim and examine the facts and holding of *Commonwealth* v. *Barbosa* to determine whether that decision requires a reversal here.

In *Barbosa*, the grand jury heard evidence of two similar drug transactions occurring on March 16, 1992. First, police observed an automobile pull up to a corner where the defendant was standing. The driver handed the defendant money, receiving in exchange an object which the defendant had removed from his mouth. The object turned out to be crack cocaine. *Commonwealth* v. *Barbosa*, *supra* at 548. About fifteen minutes later, police observed another customer, apparently on foot, approach the defendant and engage in a similar transaction, the item purchased also being crack cocaine. *Ibid.*

The grand jury indicted the defendant for one count of distribution of cocaine, one count of distribution of cocaine within a school zone, and one count of possession of cocaine with intent to distribute. The indictment referred to the date

upon which the allegedly unlawful activity took place, but did not identify the time of day or the customer. Nor was there any indication that the indictment contemplated anything other than a single act of distribution. *Ibid.*

At trial, evidence of both transactions was presented. The jury convicted the defendant in general verdicts, and the Supreme Judicial Court reversed. *Id.* at 549. Noting that this was not a case in which an indictment alleged alternative means of committing the same crime, or a continuing offense occurring at divers times and places over a period of time, the court stated "on its face, the indictment appears to refer to a single act of distributing cocaine on March 16, 1992. We are thus confronted with the very real possibility that the defendant was convicted of a crime for which he was not indicted by a grand jury." *Id.* at 550-551. It being the duty of the Commonwealth to prove the identity of the offense charged in the indictment with that on which it seeks to convict (*Commonwealth* v. *Dean*, 109 Mass. 349, 352 [1872]), the court concluded that the jury "may have reached unanimity only on a transaction for which the defendant was not indicted." *Barbosa, supra* at 551-552.

In *Barbosa*, given the presentation to the grand jury and the evidence at trial, the Supreme Judicial Court dealt with two similar offenses distinguished only by the identity of the customer, the respective ways in which each customer approached the defendant (one in an automobile, one apparently on foot), and the few minutes which separated the transactions. The defendant completed both of the transactions at or near the same location. *Id.* at 548. The grand jury indicted the defendant for a single act of distribution with nothing in the indictment to indicate which of the transactions served as the basis for the charge.

By contrast, in the present case, the indictments make it clear which of the two transactions (the apparent sale to Rose or the sale to Ritchie) was the subject of the charges. Unlike the facts in *Barbosa*, here the transactions took place at different locations. The apparent sale to Rose took place at Cedar Street. At the demand of the defendant who, according to Rose, understandably was unwilling to complete the sale with a police car in the vicinity, the operations shifted to another area and the sale to Ritchie was effected on Main Street.

Before the grand jury, the prosecutor asked Ritchie where he had made his purchase, to which he responded, "[a]djacent to the Walgreen's parking lot on Main Street." Subsequent questions and answers established that that location was approximately 800 feet from 30 Irving Street, Malden, the address of the Chevrus Elementary School. No effort was made to demonstrate a distance relationship between the location of the apparent sale to Rose (Cedar Street) and any school. Furthermore, the substance obtained from Rose, unlike that purchased from the defendant by Ritchie, was never tested. The grand jury returned indictments for distribution and distribution within a school zone, as well as an indictment for a second or subsequent offense. Given the evidence, it could only have been the sale to Ritchie, and not the prior apparent sale to Rose, that was the basis of the indictments.

In *Barbosa*, the court observes, at page 551, that "on its face, the indictment appears to refer to a single act of distributing cocaine on March 16, 1992." Because there were, however, two acts of distributing cocaine on that date, and no other guidance to be found in the evidence before the grand jury, it was not possible to know which act was the basis of the single indictment or the eventual conviction. Here, the indictments, in the light of what was presented to the grand jury, establish that the defendant was charged with the sale to Ritchie which took place within the school zone. Article 12 does not require that we ignore objective indicators that identify, not only for this court but for the defendant, the offense which is the subject of the indictment.[3] Since the defendant was not deprived of his right to have his trial preceded by an indictment, it was not

[3] Given the objective indicators that the distribution indictment was based upon the sale to Ritchie, we do not have to consider the alternative basis suggested by the Commonwealth that the same result would follow from the emphasis before the grand jury on the sale to the officer as opposed to the perfunctory reference to the apparent sale to Rose. Nor do we rely upon the Commonwealth's argument that the evidence before the grand jury did not support a finding of probable cause with respect to a sale to Rose. There did appear to be enough to justify a probable cause determination. Even if there were not, it would not have been the first occasion on which an indictment had been returned with less than probable cause (see *Commonwealth* v. *McCarthy*, 385 Mass. 160, 162-163 [1982]), and the defendant's art. 12 rights ought not to depend on an assumption that it could not happen again.

ineffective assistance of counsel not to seek dismissal on that ground. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974) (incompetence of counsel must deprive defendant of an otherwise available, substantial ground of defense).

2. *Out-of-court statements.* There was no objection at trial to the introduction in evidence of Rose's out-of-court statements. That the defendant had earlier filed an unsuccessful motion in limine to exclude the statements ordinarily does not by itself preserve the issue for appeal in the absence of a timely objection when the evidence was offered at trial. *Commonwealth* v. *Diaz*, 49 Mass. App. Ct. 587, 588 n.2 (2000). Accordingly, we review the question only to determine, in the event that there was error, whether it resulted in a substantial risk of a miscarriage of justice. *Commonwealth* v. *Hardy*, 47 Mass. App. Ct. 679, 681 (1999).

The out-of-court statements were offered for the purpose of explaining how the police came to focus upon the defendant. As such, their use was not precluded. *Commonwealth* v. *LaVelle*, 414 Mass. 146, 155 (1993).[4] The testimony was not cluttered with unnecessary details. See *Commonwealth* v. *Soto*, 45 Mass. App. Ct. 109, 113-114 (1998). Furthermore, even if there were error, it cannot be said to create a substantial risk of a miscarriage of justice in light of the direct testimony of two police eyewitnesses that the defendant exchanged heroin for cash. Given the fact that there was strong nonhearsay evidence of the crime, it is unlikely that removal of the contested evidence would have affected the outcome. *Commonwealth* v. *Ward*, 45 Mass. App. Ct. 901, 904 (1998). See *Commonwealth* v. *O'Connor*, 407 Mass. 663, 670 (1990) ("The mistaken admission of hearsay evidence, if merely cumulative of another witness's testimony, does not constitute reversible error").

3. *Statement by police witness.* On cross-examination, Detective Jordan testified that the defendant "recognized the phone number in the phone booth. He knew where it was. He knew it was a hot phone, that there was a lot of drug activity around, and he just pulled up to the phone." There was no objection.

---

[4]The statements are not hearsay to begin with, since they were offered as the reason why the police acted as they did, rather than being offered for the truth of their contents.

On appeal, the defendant argues that the statement improperly indicated that he had been involved in prior drug sales, thereby unfairly prejudicing him in the eyes of the jury. Because this issue emerges for the first time on appeal, we consider whether any error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Here, we need not pass on whether there was error, a question complicated by the fact that the challenged response was elicited on cross-examination. Given the eyewitness testimony regarding the drug transaction, it is not likely that the result would have been different had the statement not been given. *Commonwealth* v. *Wilson*, 49 Mass. App. Ct. 429, 433 (2000).

4. *Missing witness instruction.* The judge did not abuse his discretion in denying the defendant's request for a missing witness instruction regarding the Commonwealth's failure to call Rose. The defendant is not entitled to the instruction as a matter of right. *Commonwealth* v. *Richardson*, 429 Mass. 182, 184 (1999). The judge could consider that the witness was equally available to both parties. *Commonwealth* v. *Hoilett*, 430 Mass. 369, 376 (1999). Furthermore, it is doubtful that the witness would have offered testimony "of distinct importance to the defendant's case." *Commonwealth* v. *McQuade*, 46 Mass. App. Ct. 827, 831 (1999).

*Judgments affirmed.*