## Mark MacDougall *vs.* Commonwealth.

Suffolk. May 1, 2006. - August 28, 2006.

Present: Marshall, C.J., Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Due Process of Law,* Pretrial detainees. *Commissioner of Correction. Supreme Judicial Court,* Superintendence of inferior courts. *Words,* "Correctional institution."

General Laws c. 276, § 52A, did not require the Commissioner of Correction to obtain from a judge in the Superior Court approval of the transfer of a pretrial detainee from a county jail to a State correctional facility while he awaited trial. [508-510]

This court declined to exercise its supervisory power under G. L. c. 211, § 3, where the petitioner had adequate alternative avenues by which to assert his statutory challenge to his transfer as a pretrial detainee from a county jail to a State correctional facility while he awaited trial [510-511], as well as his constitutional challenge to the conditions of his pretrial confinement [511-512].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 4, 2005.

The case was considered by *Ireland,* J.

*Peter M. Onek,* Committee for Public Counsel Services (*John Reinstein* with him) for the defendant.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.

*Peter M. Onek,* Committee for Public Counsel Services (*John Reinstein* with him) for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

*Nancy Ankers White,* Special Assistant Attorney General, & *William D. Saltzman,* for Commissioner of Correction, amicus curiae, submitted a brief.

Cordy, J. The petitioner, Mark MacDougall, appeals from a judgment of a single justice of this court denying his petition for relief under G. L. c. 211, § 3. The petitioner is a pretrial detainee, awaiting trial in the Superior Court, who challenges a decision of the Commissioner of Correction (commissioner) to

transfer him from a county jail to a State correctional facility while he awaits trial. He claims that the commissioner was required to obtain approval for the transfer from a judge in the Superior Court, which was not done; and that his transfer and the conditions of his pretrial confinement violate his rights under the United States and Massachusetts Constitutions. As explained below, G. L. c. 276, § 52A, authorizes such a transfer, without a judicial determination, where a defendant has been "previously incarcerated in a correctional institution of the commonwealth under sentence for a felony."[1] Moreover, the petitioner had adequate alternative avenues for asserting both his statutory and constitutional claims. We therefore affirm the judgment of the single justice denying relief under G. L. c. 211, § 3.[2]

*Background.* The petitioner was indicted by a Norfolk County grand jury in November, 2002, for the attempted arson of a dwelling house, assault by means of a dangerous weapon, and threatening to commit a crime. He apparently fled and was in default until December 23, 2002, when bail was set at $10,000 cash. Over the next eleven months, bail was posted on his behalf on at least two occasions. He was surrendered on each occasion and his bail eventually increased to $25,000 cash or $250,000 surety bond. In September, 2004, while being held in lieu of bail at the Norfolk County house of correction, he was involved in a violent altercation with a correction officer that led to his

---

[1]General Laws c. 276, § 52A, states: "Persons held in jail for trial may, with the approval of the district attorney, and shall, by order of a justice of the superior court, be removed by the commissioner of correction to a jail in another county, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail whence they were removed. In addition, such persons, if they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction to a correctional institution of the commonwealth, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail where they were awaiting trial. The proceedings for such removals shall be the same as for the removal of prisoners from one jail or house of correction to another. The cost of support of a person so removed and of the removals shall be paid by the county whence he is originally removed."

[2]We acknowledge the amicus brief of the Committee for Public Counsel Services and the American Civil Liberties Union of Massachusetts, and the amicus brief of the Commissioner of Correction.

further indictment on charges of mayhem, assault and battery by means of a dangerous weapon, assault and battery, and assault and battery on a correction officer.[3] After the altercation, the petitioner received a disciplinary report and was awaiting a disciplinary hearing when he was transferred by the commissioner to the Massachusetts Correctional Institution at Cedar Junction (Cedar Junction),[4] where he was held in the disciplinary area of the prison "due to . . . assaultive behavior towards both inmates and staff."[5] The reason for his transfer to Cedar Junction, "assault on staff," and its statutory basis, G. L. c. 276, § 52A, were explained to him in a letter from the superintendent of Cedar Junction dated November 2, 2004.[6]

The petitioner filed a motion in his pending criminal case to "Forthwith Transfer the Defendant to a Jail or Correctional Institution While Awaiting Trial." As grounds, the petitioner argued that his transfer violated the requirements of G. L. c. 276, § 52A, because it was not authorized by an order of a judge in the Superior Court, and because it was a transfer to the "state prison" (see G. L. c. 125, § 1 [*o*], "state prison" defined as "Cedar Junction"), rather than to a "correctional institution of the commonwealth." He also argued that the conditions of his detention at Cedar Junction violated various State and Federal constitutional rights, including his right not to be subjected to punishment prior to his conviction of any crime.

The petitioner's motion was supported by a memorandum of law, and a copy of the November 2, 2004, letter from the superintendent. No affidavits were filed and the motion did not request an evidentiary hearing. After a nonevidentiary hearing, a judge in the Superior Court denied the motion, ruling that the petitioner's transfer pursuant to G. L. c. 276, § 52A, did not require an "order of the court." The petitioner then filed a peti-

---

[3]The petitioner was subsequently held without bail on these indictments.

[4]The petitioner was first transferred to the Plymouth County correctional facility, and several days later to Cedar Junction.

[5]By the time of this appeal, the petitioner had been transferred to the Souza-Baranowski Correctional Center (also a State correctional institution) in Shirley.

[6]The letter also informed the petitioner that the transfer was authorized by the district attorney's office. The petitioner does not contend otherwise.

tion for extraordinary relief under G. L. c. 211, § 3, in the
county court, seeking to enjoin the Commonwealth from hold-
ing him in the "state prison" or its "functional equivalent," and
from transferring him in the future without obtaining an order
of a judge of the Superior Court. The petition was denied by the
single justice. This appeal followed.

*Discussion.* 1. *G. L. c. 276, § 52A.* "General Laws c. 276,
§ 52A, provides for the transfer of pretrial detainees from the
county jails in which they are ordinarily held awaiting trial. In
separate sentences, the statute authorizes two different types of
detainee transfers. The first is a transfer from one county jail to
another. The second is the transfer from a county jail to a State
correctional [institution]. To facilitate both, the commissioner is
authorized to be the removing agent, responsible for transport-
ing the detainees to the receiving facility and, when requested
by the district attorney, for returning them to the jail where they
were originally awaiting trial." *Commissioner of Correction* v.
*Superior Court Dep't of Trial Court for the County of Worcester,*
446 Mass. 123, 125 (2006). The transfer of a pretrial detainee
from one county jail to another is authorized in the first sentence
of the statute. Such a transfer may be made either with the ap-
proval of the district attorney, or by order of a judge in the
Superior Court. The transfer of a detainee from a county jail to
a State correctional institution is authorized in the next sentence,
which similarly provides that it may be made with the approval
of the district attorney, but which makes no provision for
transfers to be made by order of a Superior Court judge. The
second sentence further provides that only pretrial detainees
who have previously been incarcerated in a State correctional
institution for a felony may be transferred from a jail to a State
correctional institution to await trial. *Id.*[7]

We have previously held that the transfer of an eligible
pretrial detainee from a county jail to a State correctional institu-
tion, under the provisions of § 52A, requires both the approval
of the district attorney and the authorization of the commis-

---

[7]The petitioner does not contend that he falls outside the category of pretrial
detainees who may be transferred to a State correctional institution to await
trial.

sioner, and that a Superior Court judge has no authority to order it. *Id.* at 126. The petitioner argues, however, that the third sentence of § 52A, which provides that the "proceedings for such removals [transfers] shall be the same as *for the removal of prisoners from one jail or house of correction to another*" (emphasis added), suggests that there must be a judicial proceeding in order to effectuate a transfer, presumably even if there is agreement between the commissioner and the district attorney.[8] We disagree.

While § 52A specifically authorizes the transfer of "[p]ersons held in jail for trial" from one county facility to another county facility or to a State correctional institution, its reference to proceedings for the "removal of prisoners" (a term defined in G. L. c. 125, § 1 [*m*]) "from one jail or house of correction to another" is a reference to the "removal" provisions of G. L. c. 127, which authorize and set forth the administrative procedure for the commissioner's transfer of "sentenced prisoner[s] from any jail or house of correction to any other jail or house of correction." G. L. c. 127, § 97. See G. L. c. 127, §§ 120, 121.[9] No judicial proceeding or determination is statutorily required for the transfer of such prisoners.[10] None is required here.

---

[8]The petition in this case; the memorandum filed pursuant to S.J.C. Rule 2:21, as amended, 434 Mass. 1301 (2001); and some of the briefs on appeal were filed before our decision in *Commissioner of Correction* v. *Superior Court Dep't of the Trial Court for the County of Worcester*, 446 Mass. 123 (2006).

[9]General Laws c. 127, § 120, states: "Every order of removal of the commissioner shall be signed by him or his designee and shall be directed to the officer by whom it is to be executed. All mittimuses, processes and other official papers by which a prisoner is committed or held, or attested copies thereof, shall at the time of such removal be transferred, with the order of removal, to the institution to which the prisoner is removed, and be kept therein as if he had been originally committed thereto; but if he is returned to the place from which he was removed, they shall be returned with him."

General Laws c. 127, § 121, states: "An officer authorized to serve criminal process may execute an order of removal or return issued under this chapter."

[10]The petitioner's suggestion that the term "proceedings" in the third sentence of G. L. c. 276, § 52A, was intended as a reference to an "order of a justice of the superior court" in the first sentence is contrary to the statute's legislative history. The language of the first sentence permitting a judge in the Superior Court to order the transfer of a pretrial detainee from one county jail to another was added by St. 1973, c. 514. The reference to "proceedings,"

The petitioner's argument that Cedar Junction is "the state prison" and therefore not a "correctional institution of the commonwealth" within the meaning of § 52A is also without merit. A "correctional institution" is a "correctional facility." G. L. c. 125, § 1 (*e*). A "state correctional facility," as differentiated from a "county correctional facility" (see G. L. c. 125, § 1 [*f*]), is "any correctional facility owned, operated, administered or subject to the control of the department of correction, including but not limited to: Massachusetts Correctional Institution, Cedar Junction." G. L. c. 125, § 1 (*n*). While Cedar Junction may be the "state prison," it is also clearly a "correctional institution of the commonwealth."

2. *Adequate alternative remedies.* The supervisory power of this court under G. L. c. 211, § 3, is to be used sparingly, and "should be exercised only in exceptional circumstances and where necessary to protect substantive rights in the absence of an alternative, effective remedy." *Soja* v. *T.P. Sampson Co.*, 373 Mass. 630, 631 (1977). Here, the petitioner had, and in some respects still has, adequate alternative avenues by which to assert his challenges to his transfer and the conditions of his pretrial confinement.

a. *Statutory claim.* As explained above, the commissioner was authorized by the statute to transfer the petitioner to a State correctional facility in these circumstances without prior approval from a Superior Court judge. The single justice was correct to deny G. L. c. 211, § 3, relief on the petitioner's statutory claim for that reason alone. The single justice was also correct to deny extraordinary relief pursuant to G. L. c. 211, § 3, because the petitioner had an adequate alternative avenue for asserting this claim. Faced with the commissioner's decision to transfer him, the petitioner, rather than filing a motion challenging the transfer in his underlying criminal case, and subsequently a petition for relief under G. L. c. 211, § 3, could have commenced a separate civil action against the commissioner challenging the transfer. This is the usual route by which a prisoner

---

originally in the second sentence but which became, see St. 1971, c. 592, § 1, the third sentence, was present when § 52A was enacted by St. 1943, c. 131, and, in that context, plainly refers to "proceedings" for the removal of "prisoners" set forth in other statutes.

or detainee challenges the conditions of his confinement, see *Good* v. *Commissioner of Correction*, 417 Mass. 329 (1994); *Hoffer* v. *Commissioner of Correction*, 412 Mass. 450 (1992); *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523 (1983), and we see no reason why it would not also suffice as a means of challenging the *process* by which one is transferred to a particular facility.

b. *Constitutional claims.* Having undertaken the petitioner's custody, the commissioner is required to afford him every constitutional and statutory right and convenience guaranteed to persons held for trial and presumed innocent. See, e.g., *Bell* v. *Wolfish*, 441 U.S. 520, 535 (1979) (under due process clause of United States Constitution, "detainee may not be punished prior to an adjudication of guilt"; proper inquiry is whether conditions of pretrial detention amount to punishment); *Cobb* v. *Aytch*, 643 F.2d 946, 957 (3d Cir. 1981) (pretrial detainees have right under the Sixth Amendment to United States Constitution to effective assistance of counsel and speedy trial, and conditions of detention may not unnecessarily interfere with those rights).

To the extent that the petitioner contends that the conditions of his detention (at Cedar Junction or at any other State correctional facility) do not meet constitutional standards for pretrial detainees, his remedy is to bring a civil action against the commissioner, where an appropriate factual record can be developed for judicial review. He has not developed an adequate record here.[11] Should he decide to commence a civil action, he would have available to him the full range of procedural tools

---

[11]The petitioner cites *Brown* v. *Commissioner of Correction*, 394 Mass. 89 (1985), to support his claim that his transfer to Cedar Junction subjects him to an "infamous punishment" without the benefit of trial. That case involved the transfer of a prisoner, serving a sentence for a crime on which he had not been indicted (nor waived indictment), from one State correctional facility to the State prison at Cedar Junction (then called Massachusetts Correctional Institution at Walpole). Relying on *Jones* v. *Robbins*, 8 Gray 329 (1857), the court ruled that art. 12 of the Massachusetts Declaration of Rights "prohibits the sentencing of a criminal defendant to State prison without indictment," and therefore also prohibits the commissioner from transferring such a prisoner there to serve his sentence, even if done in furtherance of the commissioner's duty to "maintain security, safety and order at all state correctional facilities." *Brown* v. *Commissioner of Correction, supra* at 92, 93. In so ruling, the court agreed that confinement in the "state prison retains the 'character of infamy,' "

available to any civil litigant in need of immediate relief. He could, for example, request that the matter be expedited, move for a preliminary injunction, and, if an injunction is denied, seek relief from a single justice of the Appeals Court or from a panel of that court. See *Packaging Indus. Group, Inc.* v. *Cheney,* 380 Mass. 609, 613-614 (1980). Filing a motion seeking relief in the criminal case does not afford a detainee the same opportunity for preliminary relief and appellate review. Moreover, questions of the condition of his confinement or the validity of his transfer from one facility to another are ancillary to the question of his guilt or innocence on the underlying criminal charges, which is the focus of the criminal case. For these reasons we conclude that a civil action, and not a motion filed in the criminal case or a petition for relief under G. L. c. 211, § 3, is the appropriate remedy.[12]

*Judgment affirmed.*

---

*id.* at 94, and that insofar as G. L. c. 127, § 97, authorized the commissioner to make such a transfer, it was unconstitutional. *Id.* at 92-94. Although the *Brown* case is distinguishable on its facts from the present case, where the petitioner was transferred to Cedar Junction to await trial and not to serve a sentence of punishment, the petitioner's argument is not insignificant. We need not decide the matter, however, because the petitioner is no longer being held at Cedar Junction, see note 5, *supra,* and because the record before us is insufficient to determine the conditions under which he is currently being held. The petitioner is free to pursue this claim, and develop an appropriate record, in any civil action he may bring against the commissioner.

[12]In the Superior Court, but not in his petition for relief under G. L. c. 211, § 3, the petitioner claimed in conclusory terms that his access to counsel was being limited as a result of his pretrial placement in a State correctional facility. This claim stands on a different footing. Unlike his claims concerning the conditions of his pretrial detention, the claim of interference with the assistance of counsel implicates a constitutional right that is central to a fair trial on the criminal charges and to the adjudication of his guilt or innocence. He therefore correctly raised that claim by motion in the criminal case, although it was unsupported by any evidence. If relief was wrongly denied, an adequate remedy lies in the appeal from any criminal conviction that may arise out of the trial of the case.