NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12462

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 76819 & others[1]  vs.
SEX OFFENDER REGISTRY BOARD.


Suffolk.     April 3, 2018. - August 1, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Sex Offender.  Sex Offender Registration and Community
     Notification Act.  Constitutional Law, Sex offender, Burden
     of proof.  Due Process of Law, Sex offender, Hearing,
     Burden of proof, Standard of proof.  Evidence, Sex
     offender, Burden of going forward, Presumptions and burden
     of proof.  Practice, Civil, Sex offender, Motion to
     dismiss, Presumptions and burden of proof, Standard of
     proof.  Supreme Judicial Court, Jurisdiction.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on October 10, 2017.

     The case was reported by Gants, C.J.


     Christopher M. Bova (William H. Burke, Special Assistant
Attorney General, also present) for the defendant.

_____

     [1] John Does, Sex Offender Registry Board Nos. 293109, 22306, 21890, 1719, 208025, 36871, 21916, 11751, 645, 22023, 5165, 34293, 20594, 37783, 54040, 6063, 96160, 7320, 11596, 151563, 276695, 35451, 31337, and 156025; and Alexander H., intervener.

Eric B. Tennen (Kate A. Frame & Andrew S. Crouch also present) for the plaintiffs.

John Reinstein, for the intervener, was present but did not argue.

Nancy A. Dolberg, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

KAFKER, J.  In this companion case to Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass.    (2018) (Noe No. 5340), we consider the burden and quantum of proof in cases in which sex offenders seek termination of their duty to register under the State's sex offender registry law, G. L. c. 6, §§ 178C-178Q.  We also address the requirement imposed on the Sex Offender Registry Board (board) to hold hearings in reclassification and termination proceedings requested by the sex offender within a reasonable amount of time.  Finally, we address various other procedural and jurisdictional questions raised by the parties.

The plaintiffs, sex offenders seeking reclassification or termination of their duty to register, sought relief from a single justice of this court, challenging both the board's allocation of the burden of proof in these proceedings and the board's failure to timely conduct offender-initiated reclassification and termination hearings.  The board moved to dismiss the petition and complaint, arguing that the single justice did not have jurisdiction to hear the matter.  The board

further contended that its delay was justified by its duty to prioritize other cases, pursuant to G. L. c. 6, § 178K (3), and its interest in the resolution of the pending Noe No. 5340 litigation.

The single justice reserved and reported to the full court so much of the case as involved the board's motion to dismiss. Additionally, the single justice reserved and reported the following question: "What is the quantum of proof required at a hearing where a sex offender requests reclassification or termination of his or her status as a registered sex offender?"

For the reasons discussed below, the motion to dismiss is denied. Additionally, for substantially the reasons discussed in Noe No. 5340, 480 Mass. at     , we conclude that due process requires that the appropriate quantum of proof in termination proceedings, as in reclassification proceedings, is clear and convincing evidence, and that the burden is imposed on the board, not the sex offender. The sex offender does, however, retain an initial burden of production to introduce evidence of changed circumstances showing that he or she "does not pose a risk to reoffend or a danger to the public." See 803 Code Mass. Regs. § 1.30(1) (2016). We further conclude that such hearings on reclassifications and terminations must take place within a

reasonable period of time after the issuance of the rescript in this case.[2]

1. Background. a. Statutory scheme. Under the sex offender registry law, an individual convicted of an enumerated sex offense may be required to register as a sex offender in the Commonwealth. See G. L. c. 6, § 178E. Offenders are classified in one of three levels depending on their risk of reoffense and degree of dangerousness. See G. L. c. 6, § 178K (2). A sex offender is classified as level one where "the board determines that the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability" of registration information. G. L. c. 6, § 178K (2) (a). A sex offender is classified as level two where "the board determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information." G. L. c. 6, § 178K (2) (b). A sex offender is classified as level three where "the board determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services in support of the plaintiffs.

is served by active dissemination" of registration information.
G. L. c. 6, § 178K (2) (c).

Pursuant to the sex offender registry law, the board prepares a recommended classification for each sex offender. G. L. c. 6, § 178L (1). If an offender objects to the board's recommendation, he or she is entitled to request an evidentiary hearing for a final determination as to his or her registration and classification. See G. L. c. 6, § 178L (1) (a), (2). The sex offender registry law requires that the hearing officer "determine by a preponderance of evidence such sex offender's duty to register and final classification." G. L. c. 6, § 178L (2). In Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 311 (2015) (Doe No. 380316), this court concluded that the statutory provision requiring only a preponderance of the evidence to determine an offender's duty to register and classification level violated the offender's procedural due process rights. We held that the board was instead constitutionally required to prove the appropriateness of an offender's initial classification by clear and convincing evidence. Id.

No sooner than three years after initial classification, an offender may seek to be reclassified at a lower level. See G. L. c. 6, § 178L (3); 803 Code Mass. Regs. § 1.31(2)(a) (2016). After our decision in Doe No. 380316, the board amended

its regulations to require that offenders prove the appropriateness of downward reclassification by clear and convincing evidence, rather than a preponderance of the evidence. See 803 Code Mass. Regs. § 1.31(2)(c). Today, in Noe No. 5340, 480 Mass. at    , we held that the regulation placing the burden of proof on the offender in downward reclassification hearings violated the offender's procedural due process rights. We concluded that the burden of proof must remain with the board to prove the appropriateness of an offender's existing classification by clear and convincing evidence. See id. The offender does, however, have an initial burden of production to provide "new information" of a decreased risk of reoffense or degree of dangerousness. See id.; G. L. c. 6, § 178L (3).

At least ten years after initial classification, an offender may seek to have his or her duty to register terminated. See G. L. c. 6, § 178G. Here, we are confronted with the question of the appropriate quantum and burden of proof in the context of such termination hearings. Pursuant to G. L. c. 6, § 178G:

> "A person required to register with the sex offender registry board may make an application to said board to terminate the obligation upon proof, by clear and convincing evidence, that the person has not committed a sex offense within ten years following conviction, adjudication or release from all custody or supervision, whichever is later, and is not likely to pose a danger to the safety of others."

To answer the reported question from the single justice, we must determine whether placing the burden of proof on an offender in termination hearings, by clear and convincing evidence, is in violation of procedural due process.

2. Discussion. a. Reported question. For substantially the same reasons outlined in our decision in Noe No. 5340, we now conclude that the appropriate quantum of proof in termination proceedings is also clear and convincing evidence and that the burden is imposed on the board. We further conclude, as we did in Noe No. 5340, that the offender retains an initial burden of production to provide new evidence. In so doing, we balance "the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved." Doe No. 380316, 473 Mass. at 311, quoting Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 100 (1998) (Doe No. 972).

i. Private interests. As we stated in Doe No. 380316, 473 Mass. at 311, the private interests at stake in sex offender registration and classification are significant. A sex offender faces "increasingly stringent affirmative reporting requirements" and is "likely to confront stigma and legal restrictions that will make it harder for him to find stable

housing or employment, and may even face threats of physical harm." Id.

Although an offender who is already registered is in a different position from that of an individual who has not yet registered, the private interests at stake remain significant. See Noe No. 5340, 480 Mass. at . The sex offender registry law requires sex offenders to register annually. See G. L. c. 6, § 178F. Such registration information is transmitted to local law enforcement where the offender lives and works, as well as law enforcement where the offender attends an institution of higher learning. See G. L. c. 6, § 178K (2); 803 Code Mass. Regs. § 1.05(9) (2016). The information is also disseminated to the Federal Bureau of Investigation and may also be provided to numerous State agencies. See G. L. c. 6, § 178K (2); 803 Code Mass. Regs. § 1.05(9)(c). In other words, "the Commonwealth [is required] annually to inform local and Federal law enforcement officers that, in its view, [the offender] presents a risk of committing a sex offense," despite any subsequent conduct to the contrary (emphasis in original). Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 790-791 (2008). A sex offender's continued duty to register thus remains "a continuing, intrusive, and humiliating regulation of the person himself." Doe v. Attorney Gen., 426 Mass. 136, 149 (1997) (Fried, J., concurring).

Accordingly, sex offenders seeking termination of their continued duty to register, and the significant consequences that follow from such registration, have substantial privacy and liberty interests at stake.

ii. Risk of erroneous deprivation. As we stated in Noe No. 5340, 480 Mass. at    , "the risk of erroneous classification and deprivation remains in reclassification proceedings and . . . that risk must continue to be borne by the government." Therefore, in reclassification proceedings the ultimate burden of proof must remain with the board to prove by clear and convincing evidence that the existing classification is current and correct. Id. See Doe No. 380316, 473 Mass. at 313, quoting Addington v. Texas, 441 U.S. 418, 427 (1979) (offenders "should not be asked to share equally with society the risk of error" in initial classification proceedings). We further concluded, however, that there is a burden of production on the offender seeking reclassification to demonstrate some change in his or her circumstances indicating a reduced risk of reoffense or degree of dangerousness, as he or she is in the best position to provide such evidence. Noe No. 5340, supra at . The same essential reasoning applies to terminations as well.

Termination, like reclassification, is not "a mere continuation of the original classification" proceedings, designed to verify the board's initial determination. Id. at

.  An offender may not apply for termination unless the offender "has not committed a sex offense within ten years following conviction, adjudication or release from all custody or supervision, whichever is later."  G. L. c. 6, § 178G. Subsequent requests for termination may be made three years after the board has denied the last motion for termination.  See 803 Code Mass. Regs. § 1.30(9).  Thus, at minimum, a sex offender only becomes eligible to apply for termination ten years after his or her initial offense.

By including a decade-long waiting period for initial termination requests, the Legislature recognized that an offender may no longer pose a danger to others after the passage of such a significant period of time.  See G. L. c. 6, § 178G. See also 803 Code Mass. Regs. § 1.33(29), (30), (31) (2016) (recognizing that likelihood of recidivism and dangerousness decreases with additional offense-free time in community, advanced age, and debilitating illness).  This ten-year waiting period is significantly longer than the three-year reclassification waiting period that we concluded amounted to a "significant passage of time and thus a meaningful waiting period" in Noe No. 5340, 480 Mass. at    .  Over the course of ten years, it is even more possible that an offender has undergone a significant change in his or her degree of dangerousness than over the course of three years.  Thus, rather

than a continuation of the original classification hearing, a termination hearing is an independent proceeding designed to determine whether an offender currently poses a danger to the safety of others, taking into account this significant passage of time and the new evidence provided by the offender.  See Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass. 475, 483 (2015).

Given that passage of time, the production of new evidence by the sex offender, and the difficulty of assessing an offender's degree of dangerousness, there is a risk of erroneous classification.  See Noe No. 5340, 480 Mass. at    .  As we have concluded in Doe No. 380316 and Noe No. 5340, that risk must be borne by the government.  Placing the burden of proof on the board by clear and convincing evidence, as is necessary in original classification and reclassification hearings, appropriately reduces the risk of erroneous deprivation.  See Noe No. 5340, supra at    ; Doe No. 380316, 473 Mass. at 311-314.

Offenders do have a burden of production to show a change in circumstances indicating that they do not pose a risk to reoffend or a danger to the public.  See 803 Code Mass. Regs. § 1.30(1).  Placing the burden of proof on the board and the burden of production on the offender seeking termination further minimizes the risk of error.  See Noe No. 5340, 480 Mass. at

. Offenders are in the best position to provide such information and thus have a duty to do so if they want their registration requirement terminated.

iii. Government interests. The State has a public safety interest in protecting "children and other vulnerable people from recidivistic sex offenders." Doe No. 380316, 473 Mass. at 313, quoting Doe No. 972, 428 Mass. at 103. In passing the sex offender registry law, the Legislature found "the danger of recidivism posed by sex offenders, especially sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, to be grave and that the protection of the public from these sex offenders is of paramount interest to the government." St. 1999, c. 74, § 1. That government interest is best accomplished, however, by accurately classifying each offender. See Soe, Sex Offender Registry Bd. No. 252997 v. Sex Offender Registry Bd., 466 Mass. 381, 391 (2013).

In Noe No. 5340, 480 Mass. at    , we stated that the "government interest in accurate classifications applies equally to reclassifications and to original classifications." So too does that interest apply to termination hearings. A sex offender's continued duty to register, despite no longer posing a risk to reoffend or a danger to the public, "distracts the public's attention from those offenders who pose a real risk of

reoffense, and strains law enforcement resources." Doe No. 380316, 473 Mass. at 313-314. See Doe No. 972, 428 Mass. at 107 (Marshall, J., concurring in part and dissenting in part) ("As observed in an altogether different context but oddly apropos of this classification system as well, 'when everything is classified, then nothing is classified, and the system becomes one to be disregarded by the cynical or the careless'" [citation omitted]).

iv. Balancing. Balancing the factors specified above, we conclude that the significant private interests at stake, the need to avoid erroneous classification, and the government's own overarching interest in accurate classification require that the burden of proof remain with the board in termination hearings. In balancing these factors in Doe No. 380316, 473 Mass. at 314-315, we determined that procedural due process required that the board have the burden of proving the appropriateness of an offender's initial classification by clear and convincing evidence. We reached this conclusion in Noe No. 5340, 480 Mass. at    , with regard to reclassification hearings, so long as the offender satisfies his or her initial burden of production to establish changed circumstances justifying reclassification, and we reach the same conclusion here as to termination hearings.

An individual's ongoing duty to register as a sex offender implicates significant liberty and privacy interests for as long

as the individual is required to register as a sex offender. Applying a clear and convincing evidence standard, with the burden on the board, throughout the classification, reclassification, and termination process provides "greater certainty that the burdens placed on [the offender] . . . are warranted," by providing greater protection against erroneous classification. Doe No. 380316, 473 Mass. at 314. The government's public safety responsibilities are also best served by accurate classification, not overclassification, which "both distracts the public's attention from those offenders who pose a real risk of reoffense, and strains law enforcement resources." Id. at 313-314.

Accordingly, we conclude that G. L. c. 6, § 178G, unconstitutionally places the burden of proof in termination hearings on the sex offender. Procedural due process requires that the burden of proof remain with the board to demonstrate the continued appropriateness of the offender's duty to register, by clear and convincing evidence. See Noe No. 5340, 480 Mass. at    ; Doe No. 380316, 473 Mass. at 314-315. The offender's burden is only one of production, to introduce credible evidence of changed circumstances demonstrating that he or she is no longer a risk to public safety.

For the reasons discussed above, and for the reasons stated in our decision in Noe No. 5340, 480 Mass. at    , we answer the

reported question as follows: the quantum of proof required at a hearing where a sex offender requests reclassification or termination of his or her status as a registered sex offender is clear and convincing evidence, with the burden of proof on the board. An offender seeking reclassification has a burden of production to show a change in circumstances indicating that the offender poses a decreased risk of reoffense or degree of dangerousness. Id. An offender seeking termination has a burden of production to show a change in circumstances indicating that the offender no longer poses a risk to reoffend or a danger to the public.

b. Motion to dismiss. In addition to the reported question, the single justice also reported this case to the full court on the motion to dismiss. "Factual allegations are sufficient to survive a motion to dismiss if they plausibly suggest that the plaintiff is entitled to relief." A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth., 479 Mass. 419, 424 (2018). See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) ("What is required at the pleading stage are factual 'allegations plausibly suggesting [not merely consistent with]' an entitlement to relief"). The board's motion to dismiss asserts lack of subject matter jurisdiction

and failure to state a claim on which relief can be granted. We address each argument in turn.

i. Subject matter jurisdiction. Although the parties disagree over the grounds on which this court has subject matter jurisdiction, there is no question that this case is properly before us. Pursuant to G. L. c. 231A, § 1, this court "may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby." See generally Moe v. Sex Offender Registry Bd., 467 Mass. 598, 600 (2014) (single justice reserved and reported complaint seeking declaratory and injunctive relief to full court). More particularly, we have previously held that declaratory relief is the proper mechanism for challenging the constitutionality of the board's regulations. See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 629 (2011) ("A challenge to the constitutionality of a regulation of general application is appropriately presented as an action for declaratory judgment"). Additionally, pursuant to G. L. c. 214, § 1, the Supreme Judicial Court has "original and concurrent jurisdiction of all cases and matters of equity cognizable under the general principles of equity jurisprudence." Thus, the

plaintiffs' claims for declaratory and injunctive relief are properly before this court.[3]

ii. Failure to state a claim. Under the sex offender registry law, reclassification hearings must be conducted "in a reasonable time." G. L. c. 6, § 178L (3). The board's regulations further require that sex offenders must be provided with notification of the board's reclassification or termination decision "as soon as practicable." See 803 Code Mass. Regs. §§ 1.30(8)(a), 1.31(7)(a). General Laws c. 6, § 178K (3), also

_____

[3] While the amended complaint focuses largely on declaratory and injunctive relief, the plaintiffs continue to argue for relief under G. L. c. 211, § 3, as well as for mandamus under G. L. c. 249, § 5, both in their opposition to the board's motion to dismiss and in their brief to the full court. The board argues on appeal that the plaintiffs are foreclosed from seeking relief under G. L. c. 211, § 3, or G. L. c. 249, § 5. We agree. Our superintendence authority under G. L. c. 211, § 3, "is to be used sparingly, and 'should be exercised only in exceptional circumstances and where necessary to protect substantive rights in the absence of an alternative, effective remedy.'" MacDougall v. Commonwealth, 447 Mass. 505, 510 (2006), quoting Soja v. T.P. Sampson Co., 373 Mass. 630, 631 (1977). Similarly, a claim seeking mandamus under G. L. c. 249, § 5, "does not lie if any other effective remedy exists." County Comm'rs of Middlesex County v. Sheriff of Middlesex County, 361 Mass. 89, 90-91 (1972). Here, the plaintiffs have other available remedies, namely declaratory and equitable relief, and thus are not entitled to relief under G. L. c. 211, § 3, or G. L. c. 249, § 5. See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 629 (2011) ("A challenge to the constitutionality of a regulation of general application is appropriately presented as an action for declaratory judgment"). Further, G. L. c. 211, § 3, only empowers us to exercise superintendence over "courts of inferior jurisdiction," not executive agencies.

creates a specific prioritization scheme for conducting initial classifications that the board must follow.[4]

Subsequent to our decision in Doe No. 380316, 473 Mass. at 314 n.26, hundreds of initial classification proceedings then pending before the board, the Superior Court, and the appellate courts were remanded to the board to apply the appropriate quantum of proof. In light of our ruling, and the board's statutory duty to prioritize certain cases under G. L. c. 6, § 178K (3), the board "triaged" its caseload, prioritizing this backlog of initial classifications. See G. L. c. 6, § 178K (3). Less than two years later, when the Superior Court judge in the case underlying Noe No. 5340 declared that placing the burden of proof on offenders in reclassification hearings was unconstitutional, the board elected not to resume

---

[4] General Laws c. 6, § 178K (3), provides in relevant part:

"The sex offender registry board shall make a determination regarding the level of risk of reoffense and the degree of dangerousness posed to the public of each sex offender listed in said sex offender registry and shall give immediate priority to those offenders who have been convicted of a sex offense involving a child or convicted or adjudicated as a delinquent juvenile or as a youthful offender by reason of a sexually violent offense or of a sex offense of indecent assault and battery upon a mentally retarded person pursuant to [G. L. c. 265, § 13F], and who have not been sentenced to incarceration for at least [ninety] days, followed, in order of priority, by those sex offenders who (1) have been released from incarceration within the past [twelve] months, (2) are currently on parole or probation supervision, and (3) are scheduled to be released from incarceration within six months."

reclassification hearings pending a definitive resolution of that case by this court.  As of February, 2018, approximately 1,115 sex offenders were waiting for a hearing on their request for downward reclassification or termination.[5]

On appeal, the board argues that the plaintiffs' claims for equitable relief must be dismissed because the board was lawfully acting within its own discretion in prioritizing initial classification hearings and awaiting the outcome of Noe No. 5340 before resuming reclassification or termination hearings.

We recognize the practical constraints placed on the board by our decision in Doe No. 380316, as well as the board's interest in awaiting the outcome of Noe No. 5340 before reinitiating reclassification and termination hearings, which may otherwise have to be remanded to the board to apply a different quantum or burden of proof.  Further, we recognize the board's statutory mandate to prioritize particular hearings under G. L. c. 6, § 178K (3).  However, Noe No. 5340 has now been decided and the board properly conceded at oral arguments that it has worked through the backlog generated by Doe No. 380316, with only a "handful" of those cases left.  Thus, the

---

[5] Downward reclassification hearings constituted 12.8 per cent of the total number of hearings conducted by the board in 2014; 23.7 per cent of the hearings conducted in 2015; and 1.8 per cent of the hearings conducted in 2016.

reasons cited by the board for failing to conduct offender-initiated reclassification and termination hearings no longer exist.  More importantly, a significant backlog of such hearings has been created with lengthy delays for individual offenders, some of whom have waited over four years for a hearing.  Given this backlog, and the lengthy delays for individual offenders, we conclude that the motion to dismiss is properly denied.

We do not consider the "reasonable time" standard to be a rigid one; rather, it requires a "fair consideration of the total circumstances of the case."  School Comm. of Boston v. Board of Educ., 363 Mass. 20, 28 (1973).  However, it does not provide the board with unfettered discretion to delay offender-initiated reclassification and termination hearings, particularly given that the Doe No. 380316 backlog no longer exists and Noe No. 5340 has now been decided.  The board must promptly begin to confront this large backlog of offender-initiated reclassification and termination hearings, and conduct such hearings in a reasonable time after the issuance of this rescript.  The board shall report to the single justice on its plan for addressing this backlog within thirty days from issuance of this rescript.  The single justice shall determine whether the plan satisfies the reasonable time standard and, if it does not, shall issue appropriate orders to ensure compliance with that standard, consistent with this opinion.

3. <u>Conclusion</u>.  The motion to dismiss the plaintiffs' claims is denied.  The case is remanded to the single justice for further proceedings consistent with this opinion, as appropriate.

<u>So ordered</u>.