NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12182


JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 326573  vs.  SEX
OFFENDER REGISTRY BOARD (and a consolidated case[1]).



Suffolk.     February 7, 2017. - June 23, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Sex Offender.  Sex Offender Registration and Community
Notification Act.  Internet.



Civil action commenced in the Superior Court Department on
November 21, 2014.

A motion for preliminary injunction was heard by Gregg J.
Pasquale, J., and the case was reported by him to the Appeals
Court.

The Supreme Judicial Court granted an application for
direct appellate review.

Civil action commenced in the Superior Court Department on
June 22, 2015.

A motion for a preliminary injunction was heard by Heidi E.
Brieger, J.

A proceeding for interlocutory review was allowed in the
Appeals Court by Judd J. Carhart, J.  The Supreme Judicial Court
granted an application for direct appellate review.

---

[1] John Doe, Sex Offender Registry Board No. 15890 vs. Sex
Offender Registry Board.

Andrew S. Crouch for John Doe, Sex Offender Registry Board No. 326573, & another.

John P. Bossé for the defendant.

Dana Goldblatt, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GANTS, C.J.  In Moe v. Sex Offender Registry Bd., 467 Mass. 598, 616 (2014), we permanently enjoined the Sex Offender Registry Board (SORB) "from publishing on the Internet the registry information of any individual who was finally classified as a level two sex offender on or before July 12, 2013, unless the individual is subsequently reclassified a level two or level three sex offender."  SORB contends in these two cases that, when it unsuccessfully seeks after July 12, 2013, to reclassify a level two sex offender as a level three sex offender, the individual is reclassified a level two sex offender for purposes of Moe, and SORB may therefore publish the individual's registry information on the Internet.  We disagree. We conclude that, under Moe, a sex offender is "reclassified" only where a hearing officer allows SORB's motion to increase his or her classification based on new information indicating an increased risk of sexual recidivism, not, as here, where the hearing officer denied SORB's motion for reclassification and retained the earlier level two classification.  We therefore remand these cases to the Superior Court for the issuance of a

permanent injunction barring publication of each plaintiff's registry information on SORB's Web site on the Internet unless and until the offender is reclassified a level three sex offender.[2]

Background.  For over two decades, the Commonwealth has maintained a registration system for individuals convicted of a sex offense as defined by the sex offender registry law, G. L. c. 6, §§ 178C-178Q.  See St. 1996, c. 239, § 1.  A sex offender is required to register with SORB upon release from custody or, if not sentenced to confinement, upon notification by the court of the obligation to register.  See G. L. c. 6, § 178E (a), (c).  "Upon review of any information useful in assessing the risk of reoffense and the degree of dangerousness posed to the public by the sex offender, including . . . any materials submitted by the sex offender," SORB prepares a "recommended classification" of each offender.  G. L. c. 6, § 178L (1).  The offender has the right to challenge SORB's recommended classification, and where the offender chooses to exercise that right, a panel of three SORB members or a hearing examiner designated by SORB finally classifies the offender into one of three "levels of notification depending on the degree of risk of reoffense and

_____

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services.

the degree of dangerousness posed to the public by the sex offender."  See G. L. c. 6, §§ 178K (2), 178L (1) (a), (2).

The three levels of notification are defined as follows:

- "Where [SORB] determines that the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability, it shall give a level [one] designation to the sex offender."  G. L. c. 6, § 178K (2) (a).

- "Where [SORB] determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information, it shall give a level [two] designation to the sex offender."  G. L. c. 6, § 178K (2) (b).

- "Where [SORB] determines that the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination, it shall give a level [three] designation to the sex offender."  G. L. c. 6, § 178K (2) (c).

Over time, the Legislature has revised the required forms of public notification for the different levels of sex offender classification.  As amended in 1999, the sex offender registry law mandated that information regarding level two offenders could only be obtained by a member of the public through a request to SORB or a police department.  St. 1999, c. 74, § 2. See G. L. c. 6, §§ 178I, 178J, 178K (2) (b).  In contrast, a level three sex offender's registry information was subject to "active dissemination" by way of a "community notification plan," in which the police department in the community where the

level three sex offender resided or worked was required to notify individuals and community organizations that were likely to encounter the sex offender.  St. 1999, c. 74, § 2.  See G. L. c. 6, § 178K (2) (c).

In 2003, the Legislature amended G. L. c. 6, § 178D, to require Internet publication of registry information for level three sex offenders only.  St. 2003, c. 140, § 5.  A decade later, effective on July 12, 2013, the Legislature again amended § 178D, this time to require Internet publication of registry information for both level two and three sex offenders.  See St. 2013, c. 38, §§ 7, 9.  Plaintiffs who were classified as level two sex offenders prior to the 2013 amendments filed suit, arguing that retroactive application of the statute to mandate Internet publication of their registry information would be unreasonable, and therefore violate their right to due process under art. 12 of the Massachusetts Declaration of Rights.  See Moe, 467 Mass. at 599, 616.  We agreed and declared unconstitutional the retroactive application of the amendments "to the extent they would require the Internet publication of the registry information of individuals who were finally classified as level two sex offenders on or before July 12, 2013."  Id. at 616.

In our Moe decision, we highlighted the inequity that would result from retroactive application of the 2013 amendments.  The

imposition of a "substantial new legal consequence" in the form of Internet publication would transform offenders classified as level two prior to the amendments "into something akin to level 'two and one-half' offenders." Moe, 467 Mass. at 609. But when SORB gave such an offender a level two classification prior to the amendments, it had "implicitly determined that the offender was not so dangerous" that Internet publication was necessary to protect the public. Id. at 614. "Thus, the practical consequence of the [2013] amendments is that offenders whose degree of dangerousness, according to SORB, was not so substantial that Internet publication of their information was needed to protect the public safety would now be subject to Internet publication of their registry information." Id. The unfairness of such retroactive application of the amendments was compounded by the likelihood that some offenders classified as level two prior to the amendments had decided not to challenge that classification based on an accurate understanding that a level two classification did not carry the consequence of Internet publication. Id. at 614-615. Accordingly, we remanded the case for entry of an order "permanently enjoining SORB from publishing on the Internet the registry information of any individual who was finally classified as a level two sex offender on or before July 12, 2013, unless the individual is

subsequently reclassified a level two or level three sex offender."  Id. at 616.

The sex offender registry law permits a sex offender's final classification to be reclassified in one of two ways. First, SORB may seek reclassification where new information is received "which is relevant to a determination of a risk of re-offense or degree of dangerousness."  G. L. c. 6, § 178L (3). Although the statute would permit SORB to seek a higher or lower reclassification level where new information is received that would suggest either an increase or a decrease in the risk of sexual recidivism, the SORB regulations authorize it to seek only a higher classification level based on the "[r]eceipt of any information that indicates the offender may present an increased risk to reoffend or degree of dangerousness."  803 Code Mass. Regs. § 1.37C(10)(a) (2013).[3]  Where SORB does so, the sex offender may reject the recommended reclassification level and request a reclassification hearing that follows the same procedures as a classification hearing.  803 Code Mass. Regs.

---

[3] After the denial of reclassification in these two cases, the Sex Offender Registry Board (SORB) promulgated new regulations, which continue to provide that SORB may seek only a higher classification based on new information relevant to a sex offender's risk of sexual recidivism.  803 Code Mass. Regs. § 1.32(1) (2016).  In addition to substantive changes, the 2016 regulations are also numbered differently.  In order to avoid confusion, we refer to the 2016 regulations only in footnotes. Unless otherwise noted, the language in the 2013 regulations that we discuss is also present in the 2016 regulations.

§ 1.37C(10)(c) (2013).  Second, a sex offender may seek

reclassification based on a showing that the offender's risk of

reoffense and degree of dangerousness has decreased since his or

her final classification.  803 Code Mass. Regs. § 1.37C(1)

(2013).[4]

Both plaintiffs, John Doe, SORB No. 326573 (Doe No.

326573), and John Doe, SORB No. 15890 (Doe No. 15890), pleaded

guilty to sex offenses and received a final classification as a

level two offender before the 2013 amendments to the sex

offender registry law.  In separate proceedings, SORB sought to

reclassify each as a level three offender after the amendments

based on new information.  In each case, the hearing officer

concluded that a reclassification of the original classification

was not warranted and that the offender remained a moderate risk

to reoffend.  As to Doe No. 326573, the hearing officer found

that the "reclassification record does not provide any new or

---

[4] A sex offender who is classified as a level two or level
three offender may file a motion for reclassification no sooner
than three years after the final classification, but a sex
offender who has been convicted of a new sex offense may not
file such a motion until ten years after the final
classification.  803 Code Mass. Regs. § 1.37C(2) (2013).  The
2013 regulations also provide that a sex offender who has
experienced a material change in circumstances related to a
medical condition may file a motion for reclassification "sooner
than five years after the date of his or her prior
classification."  803 Code Mass. Regs. § 1.37C(3) (2013).  Under
the 2016 regulations, an offender may file such a motion "sooner
than three years after the date of his or her prior
classification."  803 Code Mass. Regs. § 1.31(3) (2016).

different insight into his capacity to sexually reoffend or the danger he poses to the community as a sex offender than was the case at the time of his original classification."  As to Doe No. 15890, the hearing officer found that, although much of SORB's evidence was "credible and concerning, [she did] not find these events are enough to warrant [him] to now present a high risk to reoffend or high degree of danger."[5]

After the hearing, SORB informed Doe No. 326573 that, because of the hearing officer's decision, his registry information would be made available on the SORB Web site.  Doe No. 326573 filed, in the Superior Court, a complaint for declaratory and injunctive relief and a motion for a preliminary injunction seeking a stay of the Internet publication.  A Superior Court judge allowed the motion and issued an order enjoining SORB from publishing Doe No. 326573's registry information until further notice.  The parties then filed a joint motion to report the case to the Appeals Court, pursuant to Mass. R. Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996), which the Superior Court judge allowed.  After the case was

---

[5] After SORB moved to reclassify John Doe, SORB No. 15890 (Doe No. 15890), upward to a level three sex offender, he moved for reclassification downward to a level one offender.  The hearing officer denied both motions in the same decision.  As to Doe No. 15890's motion, the hearing officer found that his "risk to sexually reoffend and his degree of dangerousness have not decreased since his last classification."

docketed in the Appeals Court, we granted Doe No. 326573's application for direct appellate review.

Doe No. 15890 filed a complaint in the Superior Court for judicial review of the hearing officer's decision, as well as a motion for a preliminary injunction to stay Internet publication of his registry information. After a judge denied the motion for a preliminary injunction, a single justice of the Appeals Court allowed Doe No. 15890's request for interlocutory relief, stating that allowing Internet publication of Doe No. 15890's registry information would effectively permit SORB to "circumvent" this court's holding in Moe. After the case was entered in the Appeals Court, we granted Doe No. 15890's application for direct appellate review. We then consolidated the appeals because of the common issue they present.

Discussion. SORB contends that, where it moves to reclassify a level two offender as a level three offender based on new information relevant to the offender's risk of sexual recidivism and where the hearing officer issues a decision after July 12, 2013, that the new information does not warrant any change in the offender's classification, the offender has been "subsequently reclassified a level two . . . sex offender" and therefore falls outside the scope of the injunction in Moe, 467 Mass. at 616, that bars Internet publication of the offender's registry information. The premise of SORB's argument is that

its motion for reclassification triggers a review of the offender's classification and, where that occurs after July 12, 2013, a determination by the hearing officer that the offender's classification should remain at level two is made with knowledge that such a classification will trigger Internet publication, thus curing the violation of due process identified in Moe.

The flaw in SORB's premise is that a decision in a reclassification hearing, in contrast with the original classification, is not written on a clean slate. Where initiated by SORB, it is essentially a hearing on a motion to increase the classification from level two to level three based on new information allegedly indicating an increased risk of sexual recidivism. The burden rests with SORB to prove that the new information warrants a reclassification to a higher offense level.[6] Where, as here, the hearing officer determines that SORB failed to meet that burden, the motion for reclassification is denied and the original level two classification remains.

---

[6] SORB's burden of proof in these two cases was proof by a preponderance of the evidence. See 803 Code Mass. Regs. §§ 1.10(1), 1.37C(10)(c) (2013). The regulations were amended after we held in John Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 314-315 (2015), that because the consequences of registration as a sex offender have become more severe, SORB must prove the appropriateness of an offender's risk classification by "clear and convincing evidence" in order to satisfy due process. SORB's burden under the new regulations for an upward classification is now proof by clear and convincing evidence. See 803 Code Mass. Regs. §§ 1.03, 1.14(1) (2016).

Because the original classification issued on or before July 12, 2013, has not changed, the denial does not result in the offender's subsequent reclassification as a level two offender within the meaning of Moe.

Similarly, where the offender moves to reduce his or her classification from a level two to a level one, the burden rests with the offender to prove that his or her risk of sexual recidivism has decreased since final classification. 803 Code Mass. Regs. § 1.37C(1), (2)(c) (2013).[7] "Motions for reclassification shall be based on new and updated information not available at the time of the original classification," 803 Code Mass. Regs. § 1.37C(5)(e) (2013), but the hearing officer is not foreclosed from considering the information relied on in determining the original classification level. Id. Where the offender fails to meet this burden, the motion for reclassification is denied and the original level two classification remains in place.

---

[7] The offender's burden of proof had been proof by a preponderance of the evidence. See 803 Code Mass. Regs. § 1.37C(1), (2)(c) (2013). But under the new SORB regulations, the offender must prove by clear and convincing evidence that his or her risk of sexual recidivism has decreased since the final classification. 803 Code Mass. Regs. § 1.31(2)(c) (2016). Consequently, even where the offender proves by a preponderance of the evidence that a lower classification is warranted in light of his or her reduced risk of sexual recidivism, the offender's motion for reclassification will be denied. Because the constitutionality of this regulation is not at issue in this case, we do not address it.

SORB argues that, where it moves for reclassification to a higher level and the offender rejects the recommended reclassification, the regulations provide that "he or she may request a hearing that follows the procedures detailed in [803 Code Mass. Regs. §§ 1.08 through 1.25 (2013)]," 803 Code Mass. Regs. § 1.37C(10)(c), which include the provision in § 1.10(1) that the hearing "shall be a de novo review" limited to determine whether SORB has met its burden to prove the offender's final classification. SORB contends that, because the reclassification hearing is a "de novo review," the denial of reclassification should be treated as a new final classification. But the regulations make clear that SORB may initiate a reclassification hearing only based on its receipt of new information and only to increase the offender's classification. The hearing officer upon SORB's application for reclassification decides only whether to increase the original classification based on the new information; where the regulations give SORB no authority to apply for a lower classification, the hearing officer, in the absence of a motion by the offender for reclassification, has no reason to reach beyond the scope of SORB's motion and reduce the classification.[8]

---

[8] As a technical matter, the regulations permit the hearing officer to "maintain, decrease, or increase" the SORB recommendation in a reclassification hearing. See 803 Code Mass. Regs. § 1.22(2) (2013). But where only SORB seeks

In essence, SORB's argument is that, when it moves to reclassify a level two offender who was classified on or before July 12, 2013, it is "heads, we win, tails, you (the offender) lose." If SORB prevails on its motion to reclassify the offender from level two to level three based on its new information, it may publish the offender's registry information on its Web site on the Internet. If it fails to prevail on its motion, the offender will be reclassified a level two offender, and it may publish the offender's registry information on its Web site on the Internet. We decline to adopt such a rule. The denial of SORB's motion to reclassify level two offenders who were finally classified on or before July 12, 2013, cannot transform them "into something akin to level 'two and one-half' offenders." See Moe, 467 Mass. at 609. Such a result would not respect our conclusion in Moe that retroactive application of the 2013 amendments requiring Internet publication of registry

reclassification, the regulations render a decrease in classification virtually impossible, because they only permit SORB to seek reclassification based on an increased risk. See 803 Code Mass. Regs. § 1.37C(10). At oral argument, SORB's attorney was asked if a hearing officer had ever reclassified a level two offender as a level one offender after SORB moved to reclassify an offender from level two to level three. SORB replied in a letter pursuant to Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982), that it had located one case where this had occurred. However, in the decision attached to the letter, the hearing officer noted that, after SORB moved to reclassify the level two offender at level three, the offender moved for reclassification as a level one sex offender. The hearing officer essentially denied SORB's motion to reclassify upward and allowed the offender's motion to reclassify downward.

information for these level two offenders "would be unreasonable
and inequitable, and therefore unconstitutional as a violation
of due process." Id. at 615. Nor does it respect the gravity
of Internet publication of an offender's registry information,
which magnifies the "risk of serious adverse consequences to
that offender, including the risk that the sex offender will
suffer discrimination in employment and housing, and will
otherwise suffer from the stigma of being identified as a sex
offender, which sometimes means the additional risk of being
harassed or assaulted." Id. at 604. See Doe v. Attorney Gen.
(No. 2), 425 Mass. 217, 221-222 (1997).[9]

We also decline to adopt SORB's argument that, where a
level two offender who was classified on or before July 12,
2013, moves to be reclassified as a level one offender, the
denial of his or her motion means that the offender has been
subsequently reclassified a level two offender and his or her

---

[9] Our opinion in Moe identified three reasons why this is
so: first, Internet publication allows the offender's registry
information to be accessed anonymously by persons from the
comfort of their own home; second, once published on the SORB
Web site, an offender's registry information will likely be
republished elsewhere on the Internet and remain publicly
available even if SORB were later to reduce or eliminate the
offender's registration requirement; and third, search engines
may reveal the registry information even to those persons who
searched the offender's name for other reasons. Moe v. Sex
Offender Registry Bd., 467 Mass. 598, 605 (2014), citing D.J.
Solove, The Future of Reputation: Gossip, Rumor, and Privacy on
the Internet 78 (2007) ("When one puts information on the
Internet, it can easily become like Frankenstein's monster,
escaping the dominion of its master").

registry information may now be published on the SORB Web site. Under the regulations in effect when Doe No. 15890 moved to reduce his classification, his failure to prove by a preponderance of the evidence that his classification should be reduced based on new information does not transform his level two classification into "something akin" to a level two and one-half classification. It means simply that his motion for reclassification is denied. If it meant more, level two offenders who were classified on or before July 12, 2013, would be deterred from ever seeking to move to reduce their classification level, because the denial of that motion would result in publication of their registry information on the SORB Web site on the Internet.[10]

Conclusion. We conclude that, under Moe, a sex offender is "reclassified" only where a hearing officer allows SORB's motion to increase his or her classification based on new information indicating an increased risk of sexual recidivism, not, as here, where the hearing officer denied SORB's motion for reclassification and retained the earlier level two classification. We affirm the judge's allowance of the motion

_____

[10] That deterrent would be even stronger under the new regulations, where an offender's motion for a lower classification will be denied unless the offender proves by clear and convincing evidence that his or her risk of sexual recidivism has decreased since final classification. See 803 Code Mass. Regs. § 1.31(2)(c). See note 7, supra.

for a preliminary injunction in Doe No. 326573's case and reverse a different judge's denial of the motion in Doe No. 15890's case, and remand these cases to the Superior Court for the issuance of a permanent injunction barring publication of each plaintiff's registry information on SORB's Web site on the Internet unless and until the offender is reclassified a level three sex offender.

So ordered.