NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12447

DANIEL NOE, SEX OFFENDER REGISTRY BOARD NO. 5340  vs.
SEX OFFENDER REGISTRY BOARD.


Suffolk.     April 3, 2018. - August 1, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Sex Offender.  Sex Offender Registration and Community
    Notification Act.  Constitutional Law, Sex offender, Burden
    of proof.  Due Process of Law, Sex offender, Hearing,
    Standard of proof, Burden of proof.  Evidence, Sex
    offender.  Practice, Civil, Sex offender, Standard of
    proof, Presumptions and burden of proof, Assistance of
    counsel.  Regulation.



    Civil action commenced in the Superior Court Department on
June 27, 2014.

    The case was heard by Brian A. Davis, J., on a motion for
judgment on the pleadings.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Christopher M. Bova for the defendant.
    Kate A. Frame (Eric B. Tennen also present) for the
plaintiff.
    William J. Kobuszewski & John C. Cratsley, pro se, amici
curiae, submitted a brief.

Nancy A. Dolberg, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

KAFKER, J.  In Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 298 (2015) (Doe No. 380316), we held that the Sex Offender Registry Board (board) is constitutionally required to prove the initial classification of a convicted sex offender under the sex offender registry law, G. L. c. 6, §§ 178C-178Q, by clear and convincing evidence.  We are now asked to consider whether reclassification hearings require the board to meet the same standard and burden of proof as initial classification hearings.  We conclude that they do. We also conclude that, given the plain language of G. L. c. 6, § 178L (3), indigent sex offenders have a right to counsel in such reclassification hearings.[1,2]

---

[1] Months after a judge in the Superior Court heard oral arguments in this case, the plaintiff's counsel learned that the plaintiff had died in August, 2016, of natural causes.  The Sex Offender Registry Board (board) argued in its appellate brief that the plaintiff's death renders this case moot.  At oral arguments before this court, however, the board eventually conceded that it makes little sense to decline to address the merits of this case on the basis of mootness, given the importance of the issues involved.  Further, the board has temporarily ceased holding reclassification hearings pending the outcome of its appeal in this case and our resolution of these issues.  Thus, "[w]e exercise our discretion to reach the merits of [this] appeal regardless of whether the matter may currently be moot, because the issues are significant and have been fully briefed and it is in the public interest to do so."  Doe v. Police Comm'r of Boston, 460 Mass. 342, 343 n.3 (2011).

1.  Background.  The sex offender registry law is "an extensive statutory registration scheme for sex offenders" designed to "protect the public from the danger of recidivism posed by sex offenders and to aid law enforcement officials in protecting their communities" (quotations omitted). Commonwealth v. Kateley, 461 Mass. 575, 576 (2012), quoting Commonwealth v. Rosado, 450 Mass. 657, 659-660 (2008).  An individual who has been convicted of a sex offense as defined under G. L. c. 6, § 178C, is required to register under the sex offender registry law on release from custody, if applicable, or on notification of his or her obligation to register.  See G. L. c. 6, § 178E (a), (c).

a.  Registration and classification.  Sex offenders are subject to a two-step registration and classification process. First, the board assesses an individual's risk of reoffense and degree of dangerousness and prepares a recommendation as to the appropriate classification level for the offender.  See G. L. c. 6, § 178L (1).  The board has identified thirty-eight factors to be considered in making this determination.  See 803 Code

---

[2] We acknowledge the amicus briefs submitted by volunteer pro bono attorneys providing legal services for veterans and by the Committee for Public Counsel Services.

Mass. Regs. § 1.33 (2016).[3]  The board's regulations recognize that "[t]hese factors may be present to varying degrees in any individual case.  The final classification level is not based on a cumulative analysis of the applicable factors, but rather a qualitative analysis of the individual sex offender's history and personal circumstances."  Id.

If the sex offender objects to the board's recommendation, he or she has the right to a de novo evidentiary hearing before an examiner who makes a final determination as to the offender's duty to register and the appropriate classification level.  See G. L. c. 6, § 178L (1); 803 Code Mass. Regs. § 1.04(3) (2016).  At the evidentiary hearing, the examiner must consider the criteria that the board has identified in its regulations when assessing an offender's risk of reoffense and degree of dangerousness.  See 803 Code Mass. Regs. § 1.04(4).  The examiner then issues a written decision and places the offender into one of three classification levels.  See 803 Code Mass. Regs. § 1.20 (2016).  The sex offender has the right to counsel at this initial classification hearing.  See G. L. c. 6, § 178L (1).

---

[3] After the plaintiff moved for reclassification, the board changed its regulatory scheme.  The new regulations are numbered differently from the ones in effect at the time of the plaintiff's motion.  To avoid confusion, we refer to the new regulations except where noted.

Where "the risk of reoffense is low and the degree of dangerousness posed to the public is not such that a public safety interest is served by public availability," the sex offender is classified as level one. G. L. c. 6, § 178K (2) (a). Where "the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information," the offender is classified as level two. G. L. c. 6, § 178K (2) (b). Where "the risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination" of the offender's information, the offender is classified as level three. G. L. c. 6, § 178K (2) (c). "Registration information for level one sex offenders is not provided to the public, information for level two and level three offenders is available to the public by request or on the Internet, and information for level three offenders may be disseminated actively to the public" (footnote omitted). Doe v. Lynn, 472 Mass. 521, 529 (2015).

The standard of proof required to satisfy due process has been the subject of much litigation. The sex offender registry law calls for the board to prove the appropriateness of a sex offender's classification by a preponderance of the evidence. See G. L. c. 6, § 178L (2). In 1998, two years after the

passage of the sex offender registry law, we held that this preponderance of the evidence standard satisfied due process under the State and Federal Constitutions.  See Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 103-104 (1998) (Doe No. 972).  However, seventeen years later, in light of changes to the sex offender registry law that had significantly increased the burdens on registered offenders, and other factors such as greater Internet dissemination of sex offender information, we determined that the preponderance of the evidence standard no longer satisfied due process.  See Doe No. 380316, 473 Mass. at 311-312, 314. Rather, the "extensive private interests now affected by classification counsel in favor of requiring a higher standard of proof," namely clear and convincing evidence, for final classification hearings.  Id. at 311-312.

b.  Reclassification.  Under the statutory and regulatory scheme, a sex offender may be reclassified in one of two ways. See Doe, Sex Offender Registry Bd. No. 326573 v. Sex Offender Registry Bd., 477 Mass. 361, 364 (2017) (Doe No. 326573). Pursuant to G. L. c. 6, § 178L (3),[4] the board can initiate

---

[4] General Laws c. 6, § 178L (3), provides:

"The board may, on its own initiative or upon written request by a police department or district attorney, seek to reclassify any registered and finally classified sex

reclassification proceedings "on its own initiative or upon written request by a police department or district attorney." Although the language of the statute allows the board to seek higher or lower reclassification level where new information is received "relevant to a determination of a risk of re-offense or degree of dangerousness," G. L. c. 6, § 178L (3), the board has promulgated regulations restricting it to seeking upward reclassification. See 803 Code Mass. Regs. § 1.32(1) (2016). Pursuant to G. L. c. 6, § 178L (3), the board must provide the

---

offender in the event that new information, which is relevant to a determination of a risk of re-offense or degree of dangerousness, is received. The board shall promulgate regulations defining such new information and establishing the procedures relative to a reclassification hearing held for this purpose; provided that (i) the hearing is conducted according to the standard rules of adjudicatory procedure or other rules which the board may promulgate, (ii) the hearing is conducted in a reasonable time, and (iii) the sex offender is provided prompt notice of the hearing, which includes: the new information that led the board to seek reclassification of the offender, the offender's right to challenge the reclassification, the offender's right to submit to the board documentary evidence relative to his risk of reoffense and the degree of dangerousness posed to the public, the offender's right to retain counsel for the hearing, and the offender's right to have counsel appointed if the offender is indigent, as determined by the board using the standards in [G. L. c. 211D]. An indigent offender may also apply for and the board may grant payment of fees for an expert witness in any case in which the board intends to rely on the testimony or report of an expert witness prepared specifically for the purposes of the reclassification proceeding. The failure of the offender to attend the hearing may result in a waiver of the offender's rights and the board's recommended reclassification becoming final."

offender with the information that led the board to seek reclassification. The offender has the right to challenge the reclassification, may submit "documentary evidence relative to his risk of reoffense and the degree of dangerousness posed to the public," and has the right to counsel. Id. Board-initiated reclassifications must follow the same procedures used for original classifications. See 803 Code Mass. Regs. § 1.32(4).

The board's regulations specify a separate procedure for sex offenders seeking downward reclassification. See 803 Code Mass. Regs. § 1.31 (2016). An individual classified as a level two or level three sex offender may seek reclassification based on a decreased risk of reoffense or degree of dangerousness. See 803 Code Mass. Regs. § 1.31(1). Offenders are eligible to seek downward reclassification no sooner than three years after the date of their final classification. 803 Code Mass. Regs. § 1.31(2)(a). An offender who has committed a new sex offense since his or her original classification, however, must be offense free for at least ten years before he or she can seek reclassification. Id. Offenders who have experienced "a material change in circumstances related to a medical condition" may file a motion for reclassification less than three years

after the date of their prior classification.  803 Code Mass. Regs. § 1.31(3).[5]

The procedure for offender-initiated downward reclassifications is as follows.  The offender must file a motion detailing why reclassification is appropriate and include supporting documentation.  803 Code Mass. Regs. § 1.31(2)(b), (c).  The offender must also supply "an affidavit that provides an overview of his or her behavior and lifestyle during the three years prior to the filing of his motion for reclassification."  803 Code Mass. Regs. § 1.31(2)(d).  The board bases its decision on new and updated information but may also consider information the board used in prior classification decisions, including any prior written decisions by the board. 803 Code Mass. Regs. § 1.31(5)(e).

The sex offender registry law does not specify the standard and burden of proof for reclassification hearings.  See G. L. c. 6, § 178L (3).  However, the board's regulations dictate that for offender-initiated motions for reclassification, the burden

---

[5] Under the 2013 regulations, offenders were required to demonstrate that they had remained offense free for more than five continuous years.  803 Code Mass. Regs. § 1.37C(2)(d) (2013).  The current regulations do not contain this requirement, but permit the board to summarily deny the offender's reclassification request if he or she has not remained offense free for more than three continuous years since his or her last classification.  See 803 Code Mass. Regs. § 1.31(2)(e) (2016).

is on the offender to prove why downward reclassification is appropriate by clear and convincing evidence.  803 Code Mass. Regs. § 1.31(2)(c).

c.  <u>Noe's reclassification</u>.  The plaintiff, Noe, was convicted of open and gross lewdness and lascivious behavior on five separate occasions between 1990 and 2004.[6]  In each incident, the plaintiff exposed himself and masturbated in public.  None of these incidents involved physical contact with the plaintiff's victims.  Noe was classified as a level three sex offender in January, 2007.  In the six years following his final classification, Noe lived in the community without any further sexual reoffenses.  In January, 2013, he filed a request for downward reclassification and was granted a hearing before the board.  In his letter to the board, Noe indicated:

> "I am writing this letter to request a reduction in my current status as level [three] sex offender.  First, I would like to accept full responsibility for my poor choices and behavior.  I have a long history of criminal activity which has had an impact on innocent people.  I express sincere regret for affecting others in a negative way and have made major changes in my life.  I admit to having a history of alcoholism and drug addiction.  I believe that my past behavior is directly related to my substance abuse issues.  I am currently sober and have not engaged in any such conduct in [seven] years.  I am currently homeless and am finding it extremely difficult to put my life back together.  There are many people who are aware of my history and status as a level [three] sex offender which make it hard to move on in my life.  This

---

[6] Apart from these sex offenses, Noe also had an extensive criminal record.

public information creates a barrier for me to gain employment and become a productive member of society.  I am truly a changed man and would like an opportunity to start my life over again.  Please take this request into consideration."

Noe appeared, pro se, before a panel of three examiners.  Noe did not offer new evidence or call any witnesses.  The board introduced only an updated copy of Noe's board of probation record and correspondences to the Boston police indicating that he was seeking reclassification.  During the hearing, Noe expressed confusion about the kind of documentation he needed to provide to the examiners.[7]  In May, 2014, the board issued a decision denying Noe's request for reclassification.  Although the board acknowledged that Noe "has remained offense free to the community for approximately seven years" and "has maintained sobriety for approximately five and one half years," the majority of the board concluded by a preponderance of the evidence[8] that Noe "remains a high risk of reoffense and a high

---

[7] At the hearing, Noe explained that he had been unable to work since 2006 or 2007, due to medical issues.  When the hearing examiners indicated that Noe needed to provide the board with medical documentation, he responded that he "didn't know [he] needed medicals."  Although he indicated a willingness at the hearing to provide medical documentation, the board was never furnished with those records.

[8] At the time of Noe's reclassification hearing, the board's regulations articulated a preponderance of the evidence standard for reclassification hearings.  See 803 Code Mass. Regs. § 1.37C(2)(c) (2013).  The regulations were amended in 2016 to

degree of dangerousness."  Accordingly, Noe's request for reclassification was denied and he was ordered to continue to register as a level three sex offender.

Noe sought judicial review of the board's decision in the Superior Court, pursuant to G. L. c. 30A, § 14, and G. L. c. 6, § 178M.  He moved for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).  While that motion was pending, Noe amended his complaint to include claims for declaratory relief under G. L. c. 231A, § 1, challenging the board's procedures for failing to provide a right to counsel in the reclassification hearing and placing the burden of proof in reclassification on the offender by clear and convincing evidence.  The Superior Court judge declared that the board's regulations, which place the burden of proof on the offender seeking reclassification, violate the offender's right to due process under the Fourteenth Amendment to the Federal Constitution and art. 12 of the Massachusetts Declaration of Rights.  The judge further declared that the board's failure, through its regulations and procedures, to provide counsel for indigent offenders who seek reclassification violates G. L. c. 6, § 178L (3).  The board appealed, and we transferred the case to this court on our own motion.

---

increase the quantum of proof to clear and convincing evidence. See 803 Code Mass. Regs. § 1.31(2)(c) (2016).

2. Discussion. "We review de novo a judge's order allowing a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c)." Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 726 (2013). A court may rule on a motion for judgment on the pleadings seeking declarations of the parties' rights if there are no material issues of fact left to be determined. See id.

a. Standard and burden of proof in reclassification proceedings. The board's regulations place the burden of proof on the offender to prove by clear and convincing evidence that downward reclassification is appropriate. 803 Code Mass. Regs. § 1.31(2)(c). To determine whether this standard and burden of proof violate due process, we apply the familiar test outlined in Mathews v. Eldridge, 424 U.S. 319 (1976), which requires that we balance "the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved." Doe No. 380316, 473 Mass. at 311, quoting Doe No. 972, 428 Mass. at 100.

i. Private interests. The private interests at stake in sex offender registration and classification are significant. The "liberty and privacy interests" implicated include "stringent affirmative reporting requirements," "stigma and legal restrictions that will make it harder . . . to find stable

housing or employment," and possible threats of physical harm.
Doe No. 380316, 473 Mass. at 311.  The effects of registration
and classification are "continuing, intrusive, and humiliating."
Doe v. Attorney Gen., 426 Mass. 136, 149 (1997) (Fried, J.,
concurring).  Dissemination of a sex offender's registry
information and photograph on the Internet also widely
publicizes the offender's registration and classification
status, magnifying their effects.  See Doe, Sex Offender
Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass.
475, 485 (2015) (Doe No. 7083).

The board asserts nonetheless that reclassification
implicates lesser private interests because the offender has
already been classified and registered, and dissemination of the
offender's information has occurred and is likely to remain on
the Internet even after the offender's reclassification.  See,
e.g., Moe v. Sex Offender Registry Bd., 467 Mass. 598, 604, 606
(2014) ("Once [level two[9] and level three sex offenders']
registry information is published on [the board's] Web site,
there is a substantial likelihood that they would soon be
identified on private Web sites listing sex offenders, and that
the subsequent removal of their names from [the board's] Web

_____

    [9] Only level two sex offenders who were classified as such
after July 12, 2013, may have their information published on the
board's Web site.  See Moe v. Sex Offender Registry Bd., 467
Mass. 598, 616 (2014).

site would not result in the removal of their names from these private Web sites").

We recognize that an offender who has previously been registered is not in the same position as someone who has never offended or never been registered.  The decision to reclassify an offender is not "written on a clean slate."  Doe No. 326573, 477 Mass. at 367.  That being said, the different classification levels have different consequences and entail different public perceptions.  These consequences include, but are not limited to, the required public Internet dissemination for level two and three offenders.  See G. L. c. 6, 178D; Doe No. 380316, 473 Mass. at 307.  The difference between level three and level two classifications can also be particularly significant, especially for aging offenders.  For example, a level three sex offender may not reside in a nursing home.  G. L. c. 6, § 178K (2) (e).  After an offender's initial classification, as he or she grows older this particular consequence has an even more significant impact on the offender's interests.  In sum, the private interests at stake in reclassification remain significant.

ii.  Risk of erroneous deprivation.  Under Mathews, 424 U.S. at 334-335, we must also examine "the risk of an erroneous deprivation of [these private interests] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  In Doe No. 380316, 473 Mass.

at 312, we concluded that imposing a clear and convincing burden of proof on the government was necessary to address "the actual risk of an erroneous deprivation of a registered sex offender's privacy or liberty" in an original classification decision. We emphasized the difficulty in determining such risk and stated that offenders "should not be asked to share equally with society the risk of error." Id. at 313, quoting Addington v. Texas, 441 U.S. 418, 427 (1979).

The board contends, however, that reclassifications are different. The offender has already been properly classified. The board argues, therefore, that it is up to offenders to prove by clear and convincing evidence changed circumstances in their lives that indicate a diminished risk of reoffense or degree of dangerousness. We conclude that the risk of erroneous classification and deprivation remains in reclassification proceedings and that that risk must continue to be borne by the government. Therefore, the ultimate burden of proof should remain with the board to prove by clear and convincing evidence that the classification is current and correct. We further conclude, however, that there is a burden of production on the offender seeking reclassification to demonstrate some change in his or her circumstances, as he or she is in the best position to provide such evidence.

The board's regulations require a significant passage of time and thus a meaningful waiting period before an offender can request a reclassification. Such requests cannot be made less than three years after the initial classification, or less than ten years afterward if another offense has occurred since the initial classification. See 803 Code Mass. Regs. § 1.31(2)(a). The reclassification regulations "recognize[] that the risk to reoffend and the degree of dangerousness posed by a sex offender may decrease over time." 803 Code Mass. Regs. § 1.31(1). See 803 Code Mass. Regs. § 1.33(29), (30), (31) (recognizing that likelihood of recidivism and dangerousness decreases with additional offense-free time in community, advanced age, and debilitating illness). Accordingly, the purpose of holding reclassification hearings is to assess an offender's current risk of reoffense and degree of dangerousness, taking into account the significant passage of time and the new information provided by the offender. Doe No. 7083, 472 Mass. at 483.

Reclassification is therefore not, as the board would seem to suggest, a mere continuation of the original classification wherein the board's determination of the proper level is reviewed or verified. Procedural safeguards for reclassification must protect against the risk that an offender will be erroneously denied a downward reclassification, despite posing a decreased risk of reoffense or degree of dangerousness.

Placing the burden of proof on the board by clear and convincing evidence, as is necessary in original classification hearings, would appropriately reduce the risk of erroneous deprivation. See Doe No. 380316, 473 Mass. at 311-314. Importantly, it would make very little sense to flip the burden of proof from clear and convincing evidence on the board in original classification proceedings to clear and convincing evidence on the offender in reclassification proceedings.[10]

Although the ultimate burden of proof by clear and convincing evidence remains on the board, offenders do have a burden of production to show a change in circumstances

---

[10] The board's reliance on Commonwealth v. Ronald R., 450 Mass. 262, 268-269 (2007), in support of placing the burden on the offender is misplaced. As we stated in Ronald R., supra at 268, "[G. L. c. 6, § 178E (f)], benefits a limited class of sex offenders by granting them the opportunity to avoid registration." This is the exception and not the rule, as "there is a presumption that sex offenders must register." Id. at 264. Section 178E (f) also requires the unusual determination that the offender does not pose a risk. We held that the "Legislature's use of the word 'not' suggests that the burden is on the sex offender because as a practical matter he is in the best position to bring forth evidence demonstrating that he does not pose a risk of reoffense." Id. at 269. Finally, if the exception is found not to apply and the offender is required to register, the burden of proof is thereafter imposed on the government to establish the appropriate classification level. See id. at 264-265. In these circumstances, where an offender seeks to avoid registration altogether, we held: "'A person who seeks relief under [this] statute bears the burden of proving that his case falls within its terms,' especially where [the] statute already protects due process rights." Id. at 268, quoting Andrews, petitioner, 449 Mass. 587, 590 (2007).

indicating a decreased risk of reoffense or degree of dangerousness. See G. L. c. 6, § 178L (3). Combining the burden of proof on the board with the burden of production on the offender seeking reclassification further minimizes the risk of error. Offenders are in the best position to provide such information and thus have a duty to do so if they seek a downward reclassification.

"The 'burden of production' refers to 'a party's obligation to come forward with evidence to support its claim.'" Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 681 n.7 (2016), quoting Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries, 512 U.S. 267, 272 (1994). To satisfy the burden of production, an offender "must present some credible evidence that circumstances have changed," such that his or her risk of reoffense or degree of dangerousness has decreased. Care & Protection of Erin, 443 Mass. 567, 572 (2005). Once the offender has satisfied this burden of production, the board has the ultimate burden to prove, by clear and convincing evidence, the appropriateness of the offender's existing classification. Imposing this burden of production and burden of proof is constitutionally necessary to prevent an undue risk of erroneous classification. See Doe No. 380316, 473 Mass. at 311-314.

iii. <u>Government interests</u>. Finally, we assess the government interests involved. <u>Mathews</u>, 424 U.S. at 335. Registration requirements provide law enforcement with important information about potentially dangerous individuals. See <u>Doe, Sex Offender Registry Bd. No. 8725</u> v. <u>Sex Offender Registry Bd</u>., 450 Mass. 780, 789-790 (2008), quoting St. 1999, c. 74, § 1 ("the registration of sex offenders is a proper exercise of police powers 'regulating present and ongoing conduct, which will provide law enforcement with additional information critical to preventing sexual victimization'"). As the Legislature explained in passing the 1999 iteration of the sex offender registry law, "the danger of recidivism posed by sex offenders, especially sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior, [is] grave and . . . the protection of the public from these sex offenders is of paramount interest to the government." St. 1999, c. 74, § 1. That interest is best served, however, by ensuring that the classification of each individual offender is accurate. See <u>Soe, Sex Offender Registry Bd. No. 252997</u> v. <u>Sex Offender Registry Bd</u>., 466 Mass. 381, 391 (2013) (<u>Soe No. 252997</u>).

The government interest in accurate classifications applies equally to reclassifications and to original classifications. Indeed, all of the interests at stake in the classification and

reclassifications of sex offenders depend on accuracy in the classification process. We have repeatedly recognized the importance of ensuring such accurate classifications. See Doe No. 380316, 473 Mass. at 314 (interest in ensuring notification and classification system is fair and accurate); Soe No. 252997, 466 Mass. at 391 ("both the public and a sex offender have a substantial interest in assuring the accuracy of the offender's classification"); Roe v. Attorney Gen., 434 Mass. 418, 430 (2001) ("It is in everyone's best interests -- including the best interests of sex offenders themselves -- that the board work from accurate, up to date, and thorough information"). See also Doe No. 972, 428 Mass. at 107 (Marshall, J., concurring in part and dissenting in part) ("The State has no interest in making erroneous classifications and implementing overbroad registration and notifications"). The overclassification of sex offenders frustrates the governmental interests in registration because it "both distracts the public's attention from those offenders who pose a real risk of reoffense, and strains law enforcement resources." Doe No. 380316, supra at 313-314.

iv. Balancing. In balancing the Mathews factors, we therefore recognize that reclassifications are different from original classifications, but there remain important private interests at stake in reclassifications, as the different levels impose significantly different consequences for offenders. We

also note that in downward reclassification proceedings the offender is in the best position to know whether changed circumstances exist that justify reclassification and is also in the best position to bring such evidence forward, and thus has a burden of production to do so if he or she wants to be reclassified downward.

We further recognize that in reclassifications, as in original classifications, there remains an actual risk of misclassification due to the passage of time and changed circumstances. Given the difficulties of accurate classification, such classification is best achieved through imposing a clear and convincing evidence standard. See Doe No. 380316, 473 Mass. at 314. We also conclude that the risk of misclassification must be borne by the government, not the offender. See id. at 313. Consequently, once the offender has met his or her burden of production in downward reclassification proceedings, due process requires that the board be required to prove the appropriateness of the offender's current classification by clear and convincing evidence. If the board fails to satisfy this burden of proof, the offender must be reclassified to a lower level.[11]

_____

[11] We note, however, that if a level three offender seeks reclassification to level one and the board fails to prove by clear and convincing evidence that the offender should remain

Our balancing also recognizes that the government has important public protection interests at stake in reclassifications as well as original classifications, as many of these offenders remain public safety concerns, but those interests are best served by an accurate classification. Overclassification, as explained above, strains public safety resources.

Our balancing of the Mathews factors therefore results in a burden of production being imposed on the offender in downward reclassification proceedings to provide some evidence of changed circumstances, but requires the board to prove by clear and convincing evidence that the offender is properly classified once such evidence is provided. We conclude that such process, and the accompanying burdens of production and proof, properly balance the Mathews factors.

b. Right to counsel in reclassification proceedings. We must next determine whether the board's regulations violate G. L. c. 6, § 178L (3), insofar as they fail to provide the right to counsel for indigent offenders seeking reclassification. We review the validity of regulations

---

classified at level three, the offender will not necessarily be reclassified at level one. Rather, if the board has presented evidence sufficient to show by clear and convincing evidence that the offender should at least be classified as level two, the offender's classification will only be reclassified downward to level two, not level one.

promulgated by the board "guided by the established principle that '[r]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.'" Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 646 (2000), quoting Dowell v. Commissioner of Transitional Assistance, 424 Mass. 610, 613 (1997). We may reject, however, an "agency regulation that is contrary to the plain language of the statute and its underlying purpose." Massachusetts Teachers' Retirement Sys. v. Contributory Retirement Appeal Bd., 466 Mass. 292, 301 (2013), quoting Duarte v. Commissioner of Revenue, 451 Mass. 399, 408 (2008).

The board urges us to interpret G. L. c. 6, § 178L (3), as providing the right to counsel in "board-initiated" reclassifications but not in "offender-initiated" reclassifications. This proposed distinction has no basis in the text of the statute. Section 178L does not distinguish between board-initiated reclassifications and offender-initiated reclassifications. Rather, it refers only to "reclassification hearing[s]" held for the purpose of reclassifying offenders "in the event that new information, which is relevant to a determination of a risk of re-offense or degree of dangerousness, is received." G. L. c. 6, § 178L (3). The statute also makes no distinction between upward

reclassifications and downward reclassifications. It simply provides that the board may seek to reclassify "any registered and finally classified sex offender" when it receives new information. Id. In all such hearings, the offender is guaranteed the right to counsel. Id.

This understanding of § 178L (3) is also in accord with the over-all statutory scheme. As discussed above, the board's interests depend greatly on the classification being accurate and current. Therefore, a key purpose of the reclassification process is ensuring that the offender is accurately classified, based on current information. Indeed, reclassification is an essential component of the registration scheme because it is the only means through which an offender can obtain a lower classification level where the circumstances warrant it. Without such a provision, an offender could face indefinite registration and classification at his or her original classification level, regardless of any subsequent changes in circumstance or rehabilitation.

Even under the board's own interpretation of the statute, the sex offender registry law provides sex offenders with the right to counsel at the initial classification hearing, at board-initiated upward reclassification hearings, and at a termination hearing. Given that the sex offender registry law provides the right to counsel at each of these other hearings,

it makes little sense to interpret § 178L (3) as depriving indigent offenders of the right to counsel exclusively in the context of offender-initiated reclassification hearings, particularly in the absence of any statutory language to that effect.

By contrast, providing indigent offenders with a right to counsel in offender-initiated reclassification hearings logically comports with the complex nature of the reclassification process. The regulations require that the offender provide the board with an affidavit, a detailed motion, and documentation that addresses specific topics. See 803 Code Mass. Regs. § 1.31(2)(b),(c),(d). The board determines the offender's risk of reoffense and degree of dangerousness using risk factors derived from sophisticated scientific research. See 803 Code Mass. Regs. § 1.33. Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 85 Mass. App. Ct. 1, 9-10 (2014) (scientific and statistical studies on risk factors are "technical and complex," and expert testimony is important for proper interpretation and understanding). The offender is expected to present evidence to the board, whether through witness testimony or documentary evidence, that is probative of these factors.

Noe's hearing before the board illustrates how difficult it can be for indigent offenders to navigate the reclassification

process without counsel. At his hearing, Noe introduced no evidence and called no witnesses, other than himself. He appeared confused at times and wanted to address topics beyond the scope of the hearing. He spoke at length about his guilty pleas and the underlying facts that led to his duty to register and his classification as a level three sex offender. Noe also testified that he had injuries to his back and shoulders that were significant enough to keep him from working but failed to provide any documentation of the injury even after the hearing examiners requested it. This may have been significant in the board's determination. See G. L. c. 6, § 178K (1) (d) (evidence of physical condition that would minimize risk of reoffense is factor to be considered in risk of reoffense); 803 Code Mass. Regs. § 1.33(31) ("the [b]oard shall give consideration to the offender who has a physical condition that is documented by a treating medical provider" [emphasis added]). As Noe's case demonstrates, many, if not most, offenders are simply not capable of adequately representing themselves when appearing before the board. This only inhibits the ability of reclassification proceedings to accurately classify the offender.

Recognizing the importance and complexity of this process, the Legislature has provided a statutory right to counsel throughout the registration and classification process.

Juvenile offenders must be represented by counsel at initial classifications as well as any subsequent reclassifications. See G. L. c. 6, § 178L (2) ("All offenders who are juveniles at the time of notification shall be represented by counsel at the hearing"); G. L. c. 6, § 178L (3) (same for reclassification hearing). Adult offenders have the right to retain counsel or have counsel appointed if they are indigent at the original classification hearing. G. L. c. 6, § 178L (1). General Laws c. 6, § 178L (3), gives offenders the same right to counsel for reclassification hearings, and G. L. c. 6, § 178M, extends that right to offenders who seek judicial review in the Superior Court of a classification or reclassification decision by the board. The board does not contest the fact that the Legislature gave offenders the right to counsel at each of these points, but nevertheless argues that the right to counsel is neither provided for nor necessary at offender-initiated reclassification hearings. We conclude that such an interpretation frustrates the underlying purpose of the reclassification proceeding and is not supported by the text of the statute.

Thus, the board's regulations, insofar as they fail to provide offenders with the right to counsel at reclassification hearings, are in clear conflict with both the text and the purpose of G. L. c. 6, § 178L. See Duarte, 451 Mass. at 411.

We therefore hold that the board's regulations violate G. L. c. 6, § 178L (3), insofar as they fail to provide the right to counsel for indigent offenders seeking reclassification.[12]

3.  Conclusion.  The decision of the Superior Court judge vacating the board's reclassification of Noe as a level three sex offender is affirmed.

Judgment affirmed.

---

[12] Because we conclude that indigent offenders have a statutory right to counsel at reclassification hearings, we need not address whether there is also a constitutional right to counsel at such hearings.