NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1318

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 244176

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his reclassification by the Sex Offender Registry Board (SORB) as a level two sex offender.  On appeal, Doe argues that (1) the hearing examiner's reclassification decision was not supported by substantial evidence and (2) the hearing examiner's findings concerning Internet dissemination were not sufficiently particularized.[1]  We affirm.

---

[1] Because we review the hearing examiner's decision de novo, we do not reach Doe's claim that the Superior Court judge's decision reflected the judge's unconscious racial bias in a manner detrimental to Doe.  See Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019).  Assuming arguendo the issue were before us, we see nothing from the judge's ruling to substantiate this claim.

Background.  In November 2007, Doe raped a twenty-one year old woman, whom he initially met on MySpace, while she was "almost asleep" at a mutual friend's house at around 6:30 A.M. More specifically, the victim awoke with Doe on top of her.  Doe gagged the victim with his hand, bit her neck, ripped off her clothes and removed her tampon, and proceeded to pin her down forcefully on the couch as he raped her by forcing his penis into her vagina.  Doe then raped her again on the floor.  During the rapes, Doe repeatedly told the victim, "[D]on't say nothing" and "[J]ust be quiet."

Doe was indicted for three counts of rape.  A Superior Court judge found him guilty of two counts after a bench trial on March 3, 2009.  The judge sentenced Doe to serve from three to five years in prison for one count and three years of probation following his release from prison for the second count.  In February 2013, after a hearing, SORB classified Doe as a level three sex offender.  In November 2020, Doe submitted a motion for reclassification along with new information, including letters of support from Doe's friends and photos of Doe and his family.  After a reclassification hearing, SORB reclassified Doe as a level two sex offender.  A judge of the Superior Court affirmed the level two classification.

Discussion.  "Our inquiry on appeal is similar to the inquiry conducted by [the] Superior Court judge."  Doe, Sex

2

Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 108 n.3 (2014) (Doe No. 68549).  We may set aside or modify SORB's decision if we determine "that the decision is in excess of SORB's statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence."  Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 649 (2019) (Doe No. 496501).  We give due weight to the SORB hearing examiner's experience, technical competence, and specialized knowledge, as well as to the discretionary authority conferred on SORB, mindful that SORB hearing examiners have discretion "to consider which statutory and regulatory factors are applicable and how much weight to ascribe to each factor." Doe No. 68549, supra at 109-110.

If a sex offender seeking reclassification "has satisfied [his] burden of production, the board has the ultimate burden to prove, by clear and convincing evidence, the appropriateness of the offender's existing classification."  Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 205 (2018) (Noe No. 5340).  A level two classification is appropriate where SORB shows that "the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information."  G. L. c. 6,

3

§ 178K (2) (b). "[T]o find that an offender warrants a level two classification, the board must find by clear and convincing evidence that (1) the offender's risk of reoffense is moderate; (2) the offender's dangerousness is moderate; and (3) a public safety interest is served by Internet publication of the offender's registry information." Doe No. 496501, 482 Mass. at 656. "In determining whether these elements have been established by clear and convincing evidence, a hearing examiner may consider subsidiary facts that have been proved by a preponderance of the evidence." Id.

1. Risk of reoffense. Here, the hearing examiner properly applied and weighed several regulatory factors that support a finding of a moderate risk of reoffense.[2] The examiner appropriately applied factor 7 (relationship between offender and victim) based on the extrafamilial relationship between Doe and the victim because as the regulation provides, "[t]he number of potential victims substantially increases when offenders choose to sexually offend against extrafamilial victims." 803 Code Mass. Regs. § 1.33(7)(a)(2) (2016). The examiner also properly applied factor 16 (public place) where Doe committed the sex offenses in a common area of a home in which several

---

[2] We find no abuse of discretion in the examiner's conclusion that Doe met his burden of production at his reclassification hearing.

4

other people were staying and might have detected the offenses. See 803 Code Mass. Regs. § 1.33(16)(a) ("commission of a sex offense or engaging in sexual misconduct in a place where detection is likely reflects the offender's lack of impulse control"). The examiner also gave minimum weight to factor 10 (contact with criminal justice system) where Doe had little contact with the criminal justice system following his release from incarceration. See 803 Code Mass. Regs. § 1.33(10).

As a counterbalance to the aggravating factors, the examiner applied several risk-mitigating factors. The examiner properly applied and gave moderate weight to factor 29 (offense-free time in the community) where Doe had spent less than ten years of offense-free time in his community. See 803 Code Mass. Regs. § 1.33(29).[3] The examiner also properly gave minimum weight to factor 32 (sex offender treatment). See 803 Code Mass. Regs. § 1.33(32). Doe failed to complete sex offender treatment while incarcerated. However, the hearing examiner did credit Doe's representation that he attended sex offender treatment during his term of probation, despite his not providing the required documentation.

---

[3] Additionally, the examiner reasonably assigned no weight to factor 37 (other useful information related to the nature of sexual behavior) where the articles Doe submitted reflected the language of factor 29 and thus assigning separate weight would have been redundant. See 803 Code Mass. Reg. § 1.33(37).

5

In addition, the examiner assigned moderate weight to factor 33 (home situation and support systems) because while Doe may have support as evidenced by four letters from his family and friends who appear to be aware of his sex offense, the letters did not address -- nor did Doe otherwise demonstrate -- how this support network would "provide him with guidance, supervision, and support of rehabilitation."  See 803 Code Mass. Regs. § 1.33(33) ("The Board shall give greater mitigating consideration to evidence of a support network that is aware of the offender's sex offense history and provides guidance, supervision, and support of rehabilitation" [emphasis added]).

The examiner also assigned full weight to factor 34 (stability in the community), where Doe has maintained steady employment and enjoys residential stability.  See 803 Code Mass. Regs. § 1.33(34).  Thus, we conclude the examiner, by appropriately discussing the various applicable factors, assessing weight to each factor based on the evidence, and explaining why he applied such weight, conducted "a qualitative analysis of the individual sex offender's history and personal circumstances" in assessing his risk of reoffense (citation omitted).  Noe No. 5340, 480 Mass. at 197.

2.  Dangerousness.  The examiner also properly identified, weighed, and discussed relevant regulatory factors in concluding Doe poses a moderate degree of dangerousness.  The examiner

6

appropriately applied factor 18 (extravulnerable victim), where the victim was "almost asleep" and confused as to the identity of her assailant at the time of Doe's sex offense. Her condition rendered her more susceptible to sexual assault and unable to effectively defend herself or cry for assistance. See 803 Code Mass. Regs. § 1.33(18).

The examiner properly assigned increased weight to factor 19 (level of physical contact), where Doe penetrated the victim with his penis, considering that sexual assaults involving penile penetration have been shown to result in increased psychological harm to the victim and also reflect an increased degree of the offender's dangerousness. See 803 Code Mass. Regs. § 1.33(19).

The examiner also appropriately considered factor 38 (victim impact statement) by examining the severe "mental, emotional, and physical" impact of the offense on the victim as she expressed through her written statement to the trial judge. See 803 Code Mass. Regs. § 1.33(38).

Where, as here, "the examiner's detailed written decision was balanced and fair," Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 813 (2006), we discern no abuse of discretion or other error in the examiner's conclusion that Doe poses a moderate degree of dangerousness.

3. *Internet dissemination*. Doe argues that requiring Internet dissemination of his personal information was not supported by clear and convincing evidence that it would serve a public safety interest. "[T]he determination of the degree to which public access to an offender's personal and sex offender information is in the interest of public safety must be made 'in consideration of' the offender's risk of reoffense and dangerousness" Doe No. 496501, 482 Mass. at 655, quoting 803 Code Mass. Regs. § 1.20(2) (2016). "We . . . require hearing examiners to ask whether, in light of the particular risks posed by the particular offender, Internet access to that offender's information might realistically serve to protect the public against the risk of the offender's sexual reoffense." Doe No. 496501, supra. "If the answer to this question is 'no,' classification as a level two offender is unjustified even where the offender poses a moderate risk to reoffend and a moderate degree of dangerousness." Id.

Here, the examiner did not abuse his discretion in finding that the applicable regulatory factors demonstrate a public safety interest in Internet access to Doe's registry information. See Doe No. 496501, 482 Mass. at 655. The examiner properly examined Doe's current danger to the public, finding that the regulatory factors demonstrate Doe's moderate degree of reoffense and dangerousness and noting that Doe "while

8

being in the same house with his then girlfriend and other people . . . repeatedly sexually assaulted an extra-vulnerable (asleep and confused) Victim."  See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 145-146 (2019).  The examiner also properly found that publication of Doe's registry information would serve a public interest, noting "public access to his sex offender registry information is necessary, in order to notify the families of, and protect, women who may come in contact with the Petitioner online or otherwise, from the potential danger and harm of sexual abuse."  See id.  Because Doe used an Internet social platform to meet and contact the victim, we cannot conclude that a contrary conclusion was required by the evidence when considering that

other members of the public may also encounter Doe on the Internet.

Judgment affirmed.

By the Court (Rubin,
D'Angelo & Smyth, JJ.[4]),

Clerk

Entered:  August 4, 2025.

---

[4]The panelists are listed in order of seniority.

10